**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| City of Evanston, an Illinois municipal corporation, | ) | Case No. 16-CV-5692 |
| | ) | |
| Plaintiff, | ) | Judge John Z. Lee |
| | ) | |
| v. | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Northern Illinois Gas Company, an Illinois corporation, and Commonwealth Edison Company, an Illinois corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS OF**
**DEFENDANTS NORTHERN ILLINOIS GAS COMPANY AND**
**COMMONWEALTH EDISON COMPANY**

Mark R. Ter Molen
J. Gregory Deis
Jaimy L. Hamburg
Matthew C. Sostrin
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Counsel to Northern Illinois Gas Company,*
*d/b/a Nicor Gas Company*

Gabrielle Sigel
Andrew W. Vail
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Counsel to Commonwealth Edison Company*

Dated: July 25, 2016

**Table of Contents**

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 5

I.    The Complaint Fails To State A RCRA Claim Under 42 U.S.C. § 6972(a)(1)(B) ........... 6

    A.    The City Fails To State A Plausible Claim That The Skokie MGP
        Contributed To Alleged Endangerments Involving Methane Gas And
        So-Called "MG Waste Oils" ................................................................... 6

    B.    The City Fails To State A Plausible Claim That "MG Waste Oils" Or
        Methane May Present An Endangerment That Is "Imminent And
        Substantial" ....................................................................................... 10

    C.    The City Did Not Provide Sufficient Notice Of Its Claim That "MG Waste
        Oils" Have Impacted A 300-Acre "Impacted Area" .................................. 13

    D.    Any Claim For Civil Penalties Should Be Dismissed .................................. 14

II.   The Complaint Fails To State A Claim Under Evanston's Hazardous Substances
    Ordinance ...................................................................................................... 15

    A.    The City Fails to Allege a "Hazardous Substance Incident" ........................ 16

    B.    The Utilities Are Not Liable Persons Under the Ordinance's Plain
        Language .......................................................................................... 17

III.  The Complaint Fails To State Common Law Trespass And Nuisance Claims .............. 20

    A.    The City Fails To Allege A Plausible Trespass Claim ................................. 20

    B.    The City's Private and Public Nuisance Claims Fail For the Same Reasons ...... 22

    C.    The City Fails To State A Claim For Punitive Damages ............................... 23

IV.   The City Fails To State A Claim That Nicor Breached The Franchise Agreement ........ 26

CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antler v. Classic Residence Mgmt. Ltd. P'ship*,
  315 Ill. App. 3d 259, 733 N.E.2d 393 (1st Dist. 2000)..........................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................5, 6, 7, 8

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)....................................................................................25

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) .................................................................5, 6, 22, 23

*Caraluzzi v. Prudential Secs., Inc.*,
  824 F. Supp. 1206 (N.D. Ill. 1993) ..........................................................2

*Caveney v. Bower*,
  207 Ill. 2d 82, 797 N.E.2d 596 (2003) ...............................................18, 19

*In re Chi. Flood Litig.*,
  176 Ill. 2d 179, 680 N.E.2d 265 (1997) ..............................................20, 22

*City of Evanston v. Texaco, Inc.*,
  19 F. Supp. 3d 817 (N.D. Ill. 2014) ....................................................21, 22

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*,
  532 U.S. 424 (2001)....................................................................................23

*Cordiano v. Metacon Gun Club, Inc.*,
  575 F.3d 199 (2d Cir. 2009).......................................................................10

*David Mizer Enters., Inc. v. Nexstar Broadcasting, Inc.*,
  2015 WL 469423 (C.D. Ill. Feb. 3, 2015)..............................................26

*Doe v. Univ. of Chi.*,
  404 Ill. App. 3d 1006, 939 N.E.2d 76 (1st Dist. 2010).........................19

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) .................................................................2

*Fisher v. Space of Pensacola, Inc.*,
  483 So. 2d 392 (Ala. 1986) ...................................................................24

*Forest Park Nat'l Bank & Trust v. Ditchfield*,
  881 F. Supp. 2d 949 (N.D. Ill. 2012) ....................................................10

*Fornalik v. Perryman*,
  223 F.3d 523 (7th Cir. 2000) .................................................................11

*Fox v. Am. Alt. Ins. Corp.*,
  757 F.3d 680 (7th Cir. 2014) .............................................................24, 25

*Gabelli v. SEC*,
  133 S. Ct. 1216 (2013) .......................................................................24, 25

*Hallstrom v. Tillamook County*,
  493 U.S. 20 (1989) .................................................................................13

*Jannotta v. Subway Sandwich Shops, Inc.*,
  125 F.3d 503 (7th Cir. 1997) .................................................................26

*Johansen v. Combustion Eng'g, Inc.*,
  170 F.3d 1320 (11th Cir. 1999) .............................................................24

*Kamysz v. Wheeling*,
  65 Ill. App. 3d 629, 382 N.E.2d 349 (1st Dist. 1978) .......................18, 26

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*,
  874 F. Supp. 2d 213 (S.D.N.Y. 2012) .....................................................8

*Landgraf v. Usi Film Prods.*,
  511 U.S. 244 (1994) ...........................................................................18, 25

*Lazenby v. Mark's Constr., Inc.*,
  236 Ill. 2d 83, 923 N.E.2d 735 (2010) ...................................................19

*Mann Bracken, LLP v. Executive Risk Indem., Inc.*,
  2015 WL 5721632 (D. Md. Sept. 28, 2015) .............................................8

*McWane, Inc. v. Crow Chi. Indus., Inc.*,
  224 F.3d 582 (7th Cir. 2000) .................................................................26

*Menominee Indian Tribe of Wisc. v. Thompson*,
  161 F.3d 449 (7th Cir. 1998) .................................................................11

*Messina v. Vill. of Villa Park*,
  2015 WL 4423579 (N.D. Ill. July 20, 2015) ............................................7

*N. Cal. River Watch v. Fluor*,
  2014 WL 3385287 (N.D. Cal. July 9, 2014)......................................................11, 12

*Nicol v. Lavin*,
  2004 WL 1881786 (N.D. Ill. Aug. 13, 2004) ...........................................................19

*Rahic v. Satellite Air-Land Motor Serv.*,
  2014 IL App (1st) 132899, 24 N.E.3d 315 ..............................................................20

*Saiger v. Dart*,
  2016 WL 98573 (N.D. Ill. Jan. 8, 2016) ..............................................................9, 10

*Sierra Club v. Gates*,
  2008 WL 4368531 (S.D. Ind. Sept. 22, 2008) ....................................................10, 12

*Smith v. Potter*,
  187 F. Supp. 2d 93 (S.D.N.Y. 2001).......................................................................10

*Somoye v. Klein*,
  349 Ill. App. 3d 209, 811 N.E.2d 296 (2nd Dist. 2004) ..........................................18

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ..................................................................................6

*Truhlar v. John Grace Branch No. 825*,
  2007 WL 1030237 (N.D. Ill. Mar. 30, 2007).............................................................2

*Union County v. Merscorp, Inc.*,
  920 F. Supp. 2d 923 (S.D. Ill. 2013).......................................................................15

*United States v. Midwest Generation, LLC*,
  720 F.3d 644 (7th Cir. 2013) ..................................................................................25

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) ....................................................................................2

*Vill. of Riverdale v. 138th Street Joint Venture*,
  527 F. Supp. 2d 760 (N.D. Ill. 2007) ......................................................................15

*Village of DePue v. Viacom Int'l Inc.*,
  632 F. Supp. 2d 854 (C.D. Ill. 2009) .............................................................20, 21, 22, 23

*Village of DePue v. Viacom Int'l, Inc.*,
  713 F. Supp. 2d 774 (C.D. Ill. 2010) ......................................................................21

*Warren v. Matthey*,
  2016 WL 215232 (E.D. Pa. Jan. 19, 2016) .............................................................11

*Weddle v. Smith & Nephew, Inc.*,
  2016 WL 1407634 (N.D. Ill. Apr. 11, 2016) ........................................................................10

*White v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*,
  2014 IL App (1st) 132315, 18 N.E.3d 92 ............................................................................18

*Yeftich v. Navistar, Inc.*,
  722 F.3d 911 (7th Cir. 2013) ...............................................................................................8

**Statutes**

42 U.S.C. § 6972(a) ....................................................................................................................14

42 U.S.C. § 6972(a)(1)(B) ................................................................................................... *passim*

42 U.S.C. § 6972(b)(2) ..............................................................................................................13

42 U.S.C. §§ 9601, *et seq.* ..........................................................................................................16

430 ILCS 55 ...............................................................................................................................15

430 ILCS 55/2 ............................................................................................................................16

735 ILCS 5/13-205 .....................................................................................................................23

**Other Authorities**

40 C.F.R. Part 41 .........................................................................................................................9

40 C.F.R. §§ 141.151 .................................................................................................................11

40 C.F.R. §§ 141.201 .................................................................................................................11

49 C.F.R. §172.101 ....................................................................................................................17

Fed. R. Civ. P. 8 ..........................................................................................................................8

Fed. R. Civ. P. 12(b)(6) .............................................................................................................21

Evanston City Code § 7-4-5-1(A) ..............................................................................................27

Evanston City Code §§ 9-12-1 through -5 .......................................................................... *passim*

Restatement (Second) of Torts § 166 .........................................................................................20

Restatement (Second) of Torts § 822 .........................................................................................22

## INTRODUCTION

The current lawsuit is the City of Evanston's second action seeking to shift responsibility for methane gas and other materials that have been detected under and around James Park, a former City-owned landfill. Tellingly, the City's allegations and overall theories as to the source, type, scope, and impact of these materials have changed yet again.

The City's latest allegations are deficient and fail to state a plausible claim against Northern Illinois Gas Company ("Nicor") and Commonwealth Edison Company ("ComEd") (collectively, the "Utilities"). Based almost entirely on "information and belief"—despite having nearly four years to investigate—the City for the first time alleges that so-called "MG Waste Oils" migrated from the long-shuttered and now non-existent manufactured gas plant in the Village of Skokie ("Skokie MGP") to an ambiguously-defined 300-acre "Impacted Area," contaminating soil, groundwater, and drinking water and degrading into methane.

As detailed below, the City fails to sufficiently allege an endangerment claim under the Resource Conservation and Recovery Act ("RCRA") (Count I) because: (1) the City fails to allege a plausible theory that the former Skokie MGP contributed to alleged "MG Waste Oil" and methane endangerments; (2) the City has not alleged (and cannot allege) facts showing that "MG Waste Oils" or methane may present an endangerment that is "imminent and substantial"; (3) the City failed to provide proper pre-suit notice concerning alleged "MG Waste Oil" contamination over a 300-acre "Impacted Area"; and (4) the City improperly seeks civil penalties without pleading any violations of RCRA Subchapter III. The City also does not state a claim under the Evanston Hazardous Substance Ordinance (Count II) or for its tort claims (Counts III, IV, and V), including for punitive damages. Last, the City fails to state a claim against Nicor for breach of contract under the 1982 franchise agreement (Count VI).

1

# BACKGROUND[1]

The City's lawsuits stem from a detection of methane in 2012 by the Metropolitan Water Reclamation District of Greater Chicago ("MWRD") on MWRD's property near James Park. Order at 3; Amended Notice ¶ 11. The MWRD determined that the methane likely came from the James Park landfill. Order at 3-4; Amended Notice ¶ 11 & Attachment 9 (Nov. 29, 2012 MWRD Letter, attached hereto as **Exhibit 1**).[2] The MWRD had evaluated and ruled out the potential that the methane came from either natural gas distribution pipelines in the area or the former Skokie MGP, which ceased operations in the early 1950s. Exhibit 1; Compl. ¶ 36. The City retained its own consultant to investigate, who determined that the methane likely came from remnants of pre-historic materials. Counterclaim ¶¶ 65-66. That consultant also did not point to either natural gas pipelines or the former Skokie MGP as the source. *Id.*

It was not until the City retained outside litigation counsel, who in turn hired their own

---

[1] The City's allegations against the Utilities were first filed in a Counterclaim and Third-Party Complaint in response to a declaratory judgment action filed by Nicor. Case No. 14-CV-9227, Doc. 16 (the "Counterclaim"). The City's Counterclaim in the first action will be referenced in this brief as the "Counterclaim," and the City's Complaint in the current lawsuit will be referenced as the "Complaint," and cited to as "Compl. ¶ __." The pre-suit notice that the City served on the Utilities prior to its first lawsuit will be referenced as the "Notice" (Case No. 14-CV-9227, Doc. 16-1), and the City's second pre-suit notice that the City served prior to the current lawsuit (Compl. Ex. B) will be referenced as the "Amended Notice." The Court's February 10, 2016 Memorandum Opinion and Order dismissing the City's Counterclaim (Case No. 14-CV-9227, Doc. 54-1) will be referenced as the "Order." *See also Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (courts may take judicial notice of records from "earlier … litigation," which are "readily ascertainable from the public court record and not subject to reasonable dispute").

[2] The Amended Notice is attached to the Complaint as Exhibit B, but the City omitted the Amended Notice's 24 attachments, citing their length. Compl. ¶ 13 & n.2. The Utilities attach relevant portions of the Amended Notice's attachments here. *See, e.g., Truhlar v. John Grace Branch No. 825*, 2007 WL 1030237, *7 (N.D. Ill. Mar. 30, 2007) (allowing defendant to "complete the document attached by Plaintiff" on a 12(b)(6) motion); *Caraluzzi v. Prudential Secs., Inc.*, 824 F. Supp. 1206, 1210 n.1 (N.D. Ill. 1993) (same); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (allowing courts to consider documents that are "referred to in the plaintiff's complaint and … central to her claim").

consultant, that the City began targeting the former Skokie MGP and the Utilities, as successors to the former Skokie MGP's owners and operators. *Id.* ¶¶ 69, 72-73.

In October 2014, the City served its original Notice on the Utilities. The City stated its intent to file a citizen suit pursuant to RCRA, 42 U.S.C. § 6972(a)(1)(B), alleging that methane and "coal tar" may present an imminent and substantial endangerment. Order at 5; Notice ¶ 49. Contrary to the findings of the MWRD's and the City's separate and independent consultants, the City provided notice that "the source of the methane gas at issue is leakage from … aged gas distribution line(s) in the vicinity of James Park." Notice ¶¶ 22, 46. The City further gave notice that three different data sets each "*confirm* that leakage from gas pipeline(s) … is the source of the methane gas." *Id.* ¶ 25 (emphasis added); *see id.* ¶¶ 27, 29, 31. The City also stated that "black coal tar crust" on a water line running along Dodge Avenue (to the east of James Park) had purportedly "leak[ed] … from gas distribution pipelines." *Id.* ¶¶ 35-38, 47.

In February 2015, the City filed suit against the Utilities in the form of a Counterclaim in Nicor's previously-filed declaratory judgment action. *E.g.,* Order at 1-2. The City contended that leakage of natural gas from distribution pipelines was one of two "*likely* sources" of the methane. Counterclaim ¶ 73(a) (emphasis added). The other "likely source"—alleged for the first time in the Counterclaim—was leakage of "Lowe Process waste oil" from the former Skokie MGP, which purportedly migrated down to bedrock and laterally almost a half mile to James Park, where it allegedly degraded into methane. Order at 2; Counterclaim ¶¶ 2, 31-41, 73(b). In its Counterclaim (at ¶¶ 42-44), the City also sought relief related to alleged "black crust" along the Dodge Avenue water line, which it attributed for the first time to alleged releases of Lowe Process waste oil, not coal tar as its Notice had stated. Order at 2, 4-5.

On February 10, 2016, the Court dismissed the City's RCRA claim and declined to

retain supplemental jurisdiction over the City's remaining state law claims. Order at 21. First, the Court held that methane gas is not in and of itself a RCRA "solid waste" and dismissed with prejudice the City's RCRA claim alleging leakage of natural gas from pipelines. *Id.* at 7-15. Second, the Court found that the City had failed to provide proper pre-suit notice required by RCRA and held that "[t]o the extent that the City's claim is based on alleged endangerments caused by the disposal of Lowe Process waste oil, the dismissal is without prejudice." *Id.* at 15-21. The Court allowed the City to "refile its [Lowe Process waste oil] claim after providing proper notice to Nicor and ComEd, assuming that the other requirements are satisfied." *Id.* at 21.

On February 22, 2016, the City served its Amended Notice. The Amended Notice alleged three purported endangerments. The Amended Notice first re-alleged the City's theory attributing the methane to alleged natural gas leaks, despite the Court's Order holding that the claim was dismissed with prejudice. Amended Notice ¶¶ 6(a), 7-34. The Amended Notice also alleged two new endangerments: (1) methane allegedly created by the disposal and degradation of what the City named "MG Waste Oils" from the former Skokie MGP (*id.* ¶¶ 6(b), 35-45); and (2) alleged "MG Waste Oils" in soil and groundwater "specifically appearing as a crustaceous coating ('black crust') on a potable water line running along Dodge Avenue" that threatens to and has penetrated the water line and released "constituents of MG Waste Oils to the drinking water, specifically fluoranthene and phenanthrene." *Id.* ¶¶ 6(c), 46-48.

On May 31, 2016, the City filed the current Complaint. This second lawsuit does not allege or acknowledge, even for state law claims, the City's prior theory that the methane came from leaking natural gas pipelines. The City now focuses exclusively on what it calls "MG Waste Oils." The Complaint asserts that "MG Waste Oils" allegedly associated with the former Skokie MGP came to be located in soil and groundwater in a 300-acre "Impacted Area,"

including James Park. Compl. ¶¶ 2, 4. The Complaint further alleges that "MG Waste Oils have coated and penetrated the Dodge Avenue Water Line, causing the contamination of, and threatening additional contamination to, the City's drinking water" (*id.* ¶ 2), while also acknowledging that the water line has been replaced. *Id.* ¶ 4(t). Notably, the City asserts these allegations almost entirely "on information and belief." *E.g., id.* ¶¶ 9-10, 47, 51, 71-76, 80-82. Additionally, despite its conclusory assertions that there may be an imminent and substantial endangerment, the City has not alleged that it has undertaken *any* actions since 2012 to fully investigate or address "MG Waste Oils" or methane in order to prevent any alleged danger.

## ARGUMENT

The Utilities acknowledge that the Federal Rules of Civil Procedure require only notice pleading and "[f]actual allegations [that are] enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The City's allegations, however, fail to meet even that pleading standard. While all well-pled allegations are taken as true, a court need not consider allegations that are mere "legal conclusions," or "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A claim cannot survive where it is based on allegations "consistent with" a defendant's purported liability but "stop[s] short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557; *see Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

Thus, dismissal is proper where, as here, a plaintiff fails to show "through [its] allegations that 'it is plausible, rather than merely speculative, that [it] is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Brooks*, 578 F.3d at 581.

## I.     The Complaint Fails To State A RCRA Claim Under 42 U.S.C. § 6972(a)(1)(B).

RCRA authorizes citizen suits against a person "who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). The City's RCRA claim should be dismissed because: (1) its latest "information and belief" allegations are implausible under *Iqbal* and *Twombly* and insufficient to maintain a claim against the Utilities; (2) it fails to allege an "imminent and substantial" endangerment; (3) it failed to provide the required pre-suit notice of alleged contamination to a 300-acre "Impacted Area," including to public and private property outside Evanston; and (4) it improperly seeks civil penalties. Count I should therefore be dismissed.

### A.     The City Fails To State A Plausible Claim That The Skokie MGP Contributed To Alleged Endangerments Involving Methane Gas And So-Called "MG Waste Oils."

The City is now on its fourth story attempting to explain methane and other materials allegedly detected in and around James Park. First, in its original response to the MWRD's conclusion that methane came from the City's landfill underlying James Park, the City pointed to naturally-occurring sources, *not* the former Skokie MGP. *Supra* at 2. Second, after setting its sights on the Utilities, the City asserted in its first Notice that alleged natural gas leaks were the "confirm[ed]" source of the methane. *Id.* at 3. Third, in its Counterclaim, the City pointed to alleged natural gas leaks and degradation of Lowe Process waste oil as two "likely" sources. *Id.* Now, on its fourth story—after the Court held that alleged natural gas leaks are not "solid waste" and cannot support a RCRA claim as a legal matter—the City focuses exclusively on "MG

Waste Oils." But the City has backed off its prior claims that the Utilities are the "confirmed" or even "likely" source of alleged endangerments, instead pleading its latest theory almost entirely on "information and belief." Compl. ¶¶ 9-10, 47, 51, 71-76, 80-82.

Despite having had the opportunity to investigate the source of the methane and other materials for nearly four years, the City still does not (and cannot) plead facts in support of its conclusory allegations to get across "the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557; *see also Messina v. Vill. of Villa Park*, 2015 WL 4423579, *6 (N.D. Ill. July 20, 2015) (allegations regarding element of causation that are entirely conclusory in nature are insufficient to raise a reasonable inference of causation).

The City does not claim to know how "MG Waste Oils" were purportedly released from the former Skokie MGP or migrated a half mile or more into the "Impacted Area." Instead, the City alleges these crucial elements on "information and belief." For example:

- "MG Waste Oils were produced by the Skokie MGP and, on information and belief, were conveyed by a gas distribution infrastructure associated with the Skokie MGP…." Compl. ¶ 9.

- "On information and belief, MG Waste Oils have been released from the Skokie MGP and its gas distribution infrastructure, and have come to be located in, on, under and in the vicinity of the Impacted Area." *Id.* ¶ 10.

- "On information and belief, various portions of the Skokie MGP's distribution infrastructure conveyed manufactured gas that contained MG Waste Oils that was suspended in and leaked into the Impacted Area." *Id.* ¶ 47.

- "On information and belief, this oil and tar like material [detected by the MWRD] is MG Waste Oils that was released by the Skokie MGP and its distribution infrastructure." *Id.* ¶ 51.

Indeed, nearly all of the substantive allegations in the City's RCRA claim are made "on information and belief." *Id.* ¶¶ 71-76, 80-82.

The City cannot rely on "information and belief" pleadings to survive dismissal. Courts have repeatedly held that where a plaintiff alleges facts on "information and belief" that should be within its own personal knowledge or control, its allegations are deficient and its complaint should be dismissed under Rule 8 and the *Iqbal/Twombly* plausibility standard. *See, e.g., Mann Bracken, LLP v. Executive Risk Indem., Inc.*, 2015 WL 5721632, *7 (D. Md. Sept. 28, 2015) (granting motion to dismiss complaint where plaintiff pled, on information and belief, facts "that should be squarely within Plaintiff's control"); *KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 220 (S.D.N.Y. 2012) ("[P]laintiff should not allege upon information and belief matters that are presumptively within her personal knowledge…. Such matters include matters of public record….") (internal quotations omitted); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) (affirming dismissal where pleadings made "on information and belief" were insufficient to state a plausible claim).

This is not a case involving matters peculiarly within the Utilities' knowledge. The City has had nearly four years to investigate the source of the methane and other materials allegedly detected in and around James Park. The City owns James Park and surrounding streets, and is free to conduct sampling to support its claims (as it has allegedly done). The City can also review reports from the investigation and cleanup of the former Skokie MGP site, which are in the public domain. In July 2014, Nicor provided the City with a copy of the three-volume Site Investigation Report describing the basis for the cleanup of the site, in response to the City's request for information related to subsurface structures at the site. *See* Amended Notice, Attachment 2 (July 29, 2014 Letter from M. Ter Molen at 5, attached hereto as **Exhibit 2**). The City does not allege that it finds any support for its "MG Waste Oils" migration story in the Site Investigation Report or any other documents from the Skokie MGP remediation.

Tellingly, after nearly four years of investigations and several different stories of how the Utilities are purportedly responsible for methane and other materials in and around James Park, the City's allegations against the Utilities have become *less certain* over time—going from "confirmed" to "likely" to "on information and belief." *Supra* at 3-5. Under the circumstances, the City's claims, alleged almost entirely on "information and belief," "do not permit the Court to infer more than the mere possibility" that the former Skokie MGP is the source of the endangerments alleged by the City. *Iqbal*, 556 U.S. at 679; *see also Saiger v. Dart*, 2016 WL 98573, *4 (N.D. Ill. Jan. 8, 2016) (dismissing claims where plaintiff did not allege facts sufficient to support allegations of "a link" between defendant and the harm alleged).

Similarly, the City fails to allege facts sufficient to support its theory that the former Skokie MGP is responsible for alleged drinking water contamination. Although there are no federal or state drinking water standards for fluoranthene and phenanthrene (*see generally* 40 C.F.R. Part 41), the City alleges that those two chemicals were present in drinking water in a single sample taken from the Dobson Plaza Nursing Home. Compl. ¶ 11 & Ex. A. The City, however, tested drinking water from at least *six other sources*, including sources within James Park and from Dawes Elementary School and the Levy Senior Center, none of which showed any sign of contaminants. *Id.* Thus, only a single isolated water sample—taken from the location farthest south and east from James Park and the former Skokie MGP—contained chemicals which the City alleges may be associated with "MG Waste Oils." *Id.* The City has alleged no theory, let alone one that is plausible, by which two common chemicals could have traveled from the former Skokie MGP to a faucet a half-mile away without also being present in a single other sample of drinking water, including those that are substantially closer to James Park and the former Skokie MGP.

The City has not shown that it is entitled to relief. *Iqbal*, 556 U.S. at 679. The City's pleadings, particularly that James Park is built atop a former landfill (Compl. ¶ 4(j)), demonstrate more plausible theories. *See Weddle v. Smith & Nephew, Inc.*, 2016 WL 1407634, *5 (N.D. Ill. Apr. 11, 2016) (dismissing claims where plaintiff's allegations showed potential causes of injury other than defendants' conduct); *Saiger*, 2016 WL 98573, at *4. The City's RCRA claim fails to state a plausible claim against the Utilities and should be dismissed.

### B. The City Fails To State A Plausible Claim That "MG Waste Oils" Or Methane May Present An Endangerment That Is "Imminent And Substantial."

To state a claim under § 6972(a)(1)(B), the City is required to allege that waste may present an "endangerment" that is both "imminent" and "substantial." 42 U.S.C. § 6972(a)(1)(B). While the harm need not manifest immediately, "[i]mminence generally requires a 'near-term' threat." *Forest Park Nat'l Bank & Trust v. Ditchfield*, 881 F. Supp. 2d 949, 976 (N.D. Ill. 2012). Relief is not available if "the risk of harm is remote in time, completely speculative in nature, or *de minimus* in degree." *Sierra Club v. Gates*, 2008 WL 4368531, *38 (S.D. Ind. Sept. 22, 2008); *accord Smith v. Potter*, 187 F. Supp. 2d 93, 98 (S.D.N.Y. 2001). Thus, "to engage the gears" of § 6972(a)(1)(B), there must be a "reasonable prospect of future harm" and a threat that is "near-term and involves potentially serious harm." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 211 (2d Cir. 2009) (quotation marks and citation omitted).

The City does not (and cannot) allege that "MG Waste Oils" may present an endangerment that is "imminent and substantial." With respect to drinking water, the City never expressly alleges that purported contamination of drinking water may present an imminent and substantial endangerment. *E.g.,* Compl. ¶¶ 81-82, 85(d) (alleging endangerment only to "soil, groundwater and the bedrock formation"). Nor could the City make such an allegation. The

alleged presence of "MG Waste Oils" on the Dodge Avenue water line cannot present an imminent and substantial endangerment because the City concedes that the allegedly impacted "portion of the Dodge Avenue Water Line … was replaced as part of the 2015 Water Main Replacement and Street Resurfacing Project." *Id.* ¶ 4(t).

Moreover, the City's annual water quality report—required by federal law to be published by the City (40 C.F.R. §§ 141.151 through .155)—notifies users that Evanston's drinking water "has met all [U.S. EPA] and State of Illinois drinking water health standards and has had no violations to report." City of Evanston, 2015 Water Utility Report, Water Production Bureau (attached hereto as **Exhibit 3**); *see also Warren v. Matthey*, 2016 WL 215232, *7 (E.D. Pa. Jan. 19, 2016) (dismissing RCRA endangerment claim where annual water quality reports— "which the Court can consider under a 12(b)(6) analysis as matters of public record—establish that the [plaintiffs'] drinking water is safe"). While the Complaint alleges that fluoranthene and phenanthrene have been detected in one sample at the Dobson Plaza Nursing Home, the City does not allege that it has notified the public that its detection of fluoranthene and phenanthrene may pose a risk to public health, as federal regulations would require if a risk existed. *See* 40 C.F.R. §§ 141.201 through .204. Indeed, the U.S. EPA reviewed the City's sampling results and found that "the crustaceous material that may be present in and around the Dodge Avenue Water Line does not pose an unacceptable threat to public health under the Safe Drinking Water Act." Apr. 4, 2016 U.S. EPA Letter (attached hereto as **Exhibit 4**).[3]

---

[3] U.S. EPA's letter is subject to judicial notice. *See N. Cal. River Watch v. Fluor*, 2014 WL 3385287, *6 (N.D. Cal. July 9, 2014) (taking judicial notice of letters in agency's publicly-accessible files); *see also Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (finding that courts may take judicial notice of "documents contained in the public record" and "reports of administrative bodies"); *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) ("[I]t is well-established that executive and agency determinations are subject to judicial notice.").

With respect to "MG Waste Oils" purportedly degrading into methane, the City does attempt to allege an imminent and substantial endangerment, but its allegations are wholly conclusory. *E.g.*, Compl. ¶¶ 75, 77, 81-82. Meanwhile, the City alleges that the IEPA observed the concentration of methane gas at the MWRD's property, but does not allege that the IEPA found the methane to present any risk or took any action in response to its observation. *Id.* ¶ 52. The City also alleges that it "began monitoring concentrations of methane as a percent of [its] lower explosive limit," but the City does not allege that it has observed the concentration of methane approaching that limit, or that it has observed any concentration rise at all. *Id.* ¶ 53. In fact, the City previously alleged that the Fire Chief advised the City Council that methane concentrations were not at a dangerous level. Counterclaim ¶ 71.

Notably, the City has not alleged that it has warned its citizens of the "imminent and substantial endangerment" which it claims is present, nor does it allege that it has taken any actions to prevent the "endangerment." Instead, the City continues to allow its children to attend Dawes Elementary School, it allows its seniors access to the Levy Senior Center, it allows all of its citizens to drink the City's drinking water, and—aside from filing the present lawsuit against the Utilities and "monitoring methane levels"—the City has not taken any action to address the alleged "endangerment." The City's actions and those of the IEPA and U.S. EPA are wholly inconsistent with the presence of an "imminent and substantial endangerment."

In these circumstances, any alleged risk from "MG Waste Oils" or methane is "remote in time, completely speculative in nature, or *de minimus* in degree." *Sierra Club*, 2008 WL 4368531, at *38. Nor does the City allege that the remediation of the former Skokie MGP site was inadequate to address any alleged endangerment originating from "MG Waste Oils." *See, e.g., N. Cal. River Watch*, 2014 WL 3385287, at *9 (dismissing RCRA endangerment claim

where plaintiff "failed to allege that the ongoing … remediation plans are insufficient to address the endangerment, such that an imminent threat exists"). The City, therefore, has not adequately alleged that "MG Waste Oils" or methane that allegedly degraded from "MG Waste Oils" may present an endangerment that is "imminent" and "substantial," as RCRA requires.

### C. The City Did Not Provide Sufficient Notice Of Its Claim That "MG Waste Oils" Have Impacted A 300-Acre "Impacted Area."

To bring a RCRA citizen suit, a plaintiff must first comply with notice requirements that are "mandatory conditions precedent to commencing suit." *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989). For a § 6972(a)(1)(B) claim, at least 90 days before filing suit a plaintiff must "give[] notice of the endangerment" to the U.S. EPA, the applicable State, and the defendants. *See* 42 U.S.C. § 6972(b)(2). As the Court has found, "'[i]n practical terms, the notice must be sufficiently specific to inform the [defendant] about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit.'" Order at 19 (quoting *Atl. States Legal Found. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997)).

The Court previously dismissed the City's "Lowe Process waste oil" claims for failure to comply with RCRA's pre-suit notice requirements. Order at 15-21. Among other deficiencies, the Court found that "[t]he allegations in the notice about 'coal tar' emanating from a gas pipeline onto a municipal water pipeline would not have alerted the companies to the widespread release of Lowe Process waste oil alleged in the complaint." *Id.* at 19.

The City's Amended Notice is also deficient. The Amended Notice alleges that "MG Waste Oils" are present in soil and groundwater in and around James Park, and, specifically appearing as a crustaceous coating ('black crust') on a potable water line running along Dodge Avenue in Evanston (the 'Dodge Avenue Water Line')." Amended Notice ¶ 6(c). Notably, the Amended Notice's three paragraphs specifically addressing the alleged endangerment of

13

contamination caused by the disposal of "MG Waste Oils" all focus *solely* on the purported black crust on the Dodge Avenue Water Line. *Id.* ¶¶ 46-48. They say nothing about a purported 300-acre "Impacted Area." Though the Amended Notice alleges that "MG Waste Oils" are present "in and around James Park, including Dodge Avenue and Oakton Street" in connection with the alleged endangerment of methane created by degradation of "MG Waste Oils," even that area makes up only a small part of any 300-acre "Impacted Area" alleged in the Complaint. Compl. ¶¶ 2-4, 10. James Park itself is only a small fraction of 300 acres, and even the area described in paragraph 2 of the Complaint as the Impacted Area—from Dodge west to the North Shore Channel between Oakton and Mulford—constitutes fewer than 100 acres.

Moreover, while the Amended Notice refers exclusively to alleged contamination of locations in Evanston, in the Complaint, for the first time, the City includes locations outside Evanston in its description of the "Impacted Area." *E.g.,* Compl. ¶¶ 4(a), (b), (d), (f).[4]

The Amended Notice did not notify the Utilities of the apparent widespread geographic area that is now the subject of the City's claims. The Amended Notice failed to provide sufficient information to permit the Utilities to identify the location of the alleged endangerment and what corrective actions would avert a lawsuit. As a result, the Court should, once again, dismiss the City's RCRA claim for failing to provide proper pre-suit notice.

### D. Any Claim For Civil Penalties Should Be Dismissed.

The Complaint seeks civil penalties, among other remedies. Compl. ¶ 85 & p. 20(D). Under the plain language of RCRA's citizen suit provision, a court may only impose "appropriate civil penalties under section 6928(a) and (g) of this title." 42 U.S.C. § 6972(a).

---

[4] Exhibit A to the Complaint fails to indicate the contours of the 300-acre "Impacted Area." Exhibit A is an aerial photograph of an area going significantly west into Skokie, including a Kinder Morgan natural gas facility, CTA rails and maintenance center, and other public and private property outside of Evanston's city limits.

Section 6928 is part of RCRA Subchapter III, and allows for penalties for "violation[s] of a requirement of *this subchapter*," *id.* § 6928(a)(3) (emphasis added), against "[a]ny person who violates any requirement of *this subchapter*." *Id.* § 6928(g) (emphasis added).

The City does not allege any violations of Subchapter III. Claims of "endangerment" supporting a citizen suit are not allegations of a *violation* of Subchapter III. *See, e.g.*, *Vill. of Riverdale v. 138th Street Joint Venture*, 527 F. Supp. 2d 760, 768 (N.D. Ill. 2007) (explaining that "Section 6972(a)(1)(B) [imminent and substantial endangerment] is not contained in subsection III, instead it appears in subsection VII"). Indeed, in the prior action, the City asked the Court to strike erroneous references to Subchapter III from its Counterclaim. Case No. 14-CV-9227, Doc. 36 at 3 n.2. Without alleging purported Subchapter III violations, the City cannot recover civil penalties. As a result, any claim for civil penalties should be dismissed.

## II.     The Complaint Fails To State A Claim Under Evanston's Hazardous Substances Ordinance.

In Count II, the City seeks to hold the Utilities liable under the City's Hazardous Substances Removal and Abatement Costs Ordinance, codified at Evanston City Code §§ 9-12-1 through -5 ("Ordinance") (cited to herein as "Code § 9-12-_"). The City failed to state a claim when it asserted this identical claim in its first lawsuit, and the City's claim is even weaker now that the City focuses solely on the former Skokie MGP, which ceased operations in the early 1950s. Compl. ¶ 36.

According to the Evanston City Council, the Ordinance "is modeled after the Illinois Hazardous Material Emergency Response Reimbursement Act, 430 ILCS 55" (the "Emergency Response Act"). Ord. 31-O-15, § 1 (attached hereto as **Exhibit 5**).[5] The Emergency Response

---

[5] Federal courts follow Illinois law regarding the rules for interpreting Illinois statutes and municipal ordinances. *Union County v. Merscorp, Inc.*, 920 F. Supp. 2d 923, 929 (S.D. Ill.

Act is the authorizing legislation for a municipality to adopt an ordinance permitting it to recover costs for responding to "emergency incidents, particularly transportation related," in order to help ease the burden on emergency responder budgets. 430 ILCS 55/2. The Ordinance therefore allows the City to recover costs of response to "any *hazardous substance incident* involving the actual or threatened release of a hazardous material." Code § 9-12-2(A) (emphasis added).

The Ordinance's purpose is not to allow the City to recover costs of cleaning up historical contamination, which could be addressed by the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.* The City attempts to shoehorn its claim involving alleged historical contamination from the former Skokie MGP into the City's Ordinance, which has a completely different purpose and effect. Symptomatic of that improper application of the Ordinance, Count II fails to allege: (1) a "hazardous substance incident," to trigger any application of the Ordinance; and (2) that either of the Utilities are "liable persons" as defined by the Ordinance. Count II therefore fails to state a claim.

### A.    The City Fails to Allege a "Hazardous Substance Incident."

The Ordinance is triggered by a "*hazardous substance incident* involving the actual or threatened release of a hazardous material." Code § 9-12-2(A) (emphasis added). The Ordinance defines "hazardous substance incident" as "[a]ny *emergency* circumstance involving the *sudden release* … of a hazardous substance." Code § 9-12-1 (emphasis added). However, nowhere in the Complaint does the City allege any of these foundational elements to a claim.

The City incorporates its implausible story in Count II to allege: (a) the purported migration, more than a half century ago, of "MG Waste Oils" from the former Skokie MGP located a half-mile away; (b) the presence of "MG Waste Oils" in samples taken from beneath

2013). "In construing a municipal ordinance, courts should give effect to the intention of the municipality…." *Antler v. Classic Residence Mgmt. Ltd. P'ship*, 315 Ill. App. 3d 259, 265, 733 N.E.2d 393, 398 (1st Dist. 2000).

the surface of Dodge Avenue; (c) two chemicals found in a drinking water sample at the Dobson Plaza Nursing Home for which there are no federal or state drinking water standards; and (d) degradation of "MG Waste Oils," over time, into methane.[6] None of these circumstances is alleged to present an "emergency," "hazardous substance incident," or "sudden release," nor do these terms even appear in the Complaint. Because the City has not alleged the basic elements triggering application of the Ordinance, particularly with respect to alleged "releases" from the former Skokie MGP decades ago, all of the claims in Count II should be dismissed.

**B.      The Utilities Are Not Liable Persons Under the Ordinance's Plain Language.**

The City's claim under the Ordinance apparently is based on allegations that Nicor and ComEd are each a liable "person," as defined in two subsections of the Ordinance. However, neither of these subsections apply to either of the Utilities.

*First*, the City alleges in conclusory fashion that the Utilities are liable persons as entities "owning or in control of any real property from which a hazardous substance is or may be released." Compl., Count II ¶ 73 (quoting Code § 9-12-2(A)(4)). However, nowhere in the Complaint does the City allege that the Utilities currently own or control any real property from which a hazardous substance is or may be released. The City does not allege that the Utilities currently own the former Skokie MGP site (such an allegation would be false) and instead alleges that that the Utilities are corporate successors to the entity that once owned and operated the former Skokie MGP. *Id.* Thus, the City's claims under Code § 9-12-2(A)(4) that the Utilities are liable persons based on any current real estate ownership should be dismissed.

---

[6] The City alleges that methane is a "hazardous substance" under the Ordinance because this substance is listed on a table in 49 C.F.R. §172.101. Compl., Count II, ¶ 71. However, that table refers only to "compressed" methane and natural gas, not to uncontained gas in the environment, as the City alleges has been found at the James Park landfill site.

*Second*, the City asserts that the Utilities are liable as persons "who owned or had custody or control of the hazardous substance at the time of such release, without regard to fault or proximate cause." Complaint, Count II ¶ 74 (quoting Code § 9-12-2(A)(2)). The City apparently relies on this language to attempt to impose liability on the Utilities for activities that occurred when their corporate predecessor allegedly operated the former Skokie MGP site, which the City alleges ceased operations decades before the Ordinance's enactment in 1989. Compl. ¶¶ 35-36.[7] The law prohibits this attempted retroactive application of the Ordinance.

Federal and Illinois law each presume that a statute applies only prospectively, *i.e.*, to conduct or events occurring post-enactment. *See, e.g., Landgraf v. Usi Film Prods.*, 511 U.S. 244, 273-80 (1994); *Somoye v. Klein*, 349 Ill. App. 3d 209, 213, 811 N.E.2d 296, 299 (2nd Dist. 2004). A statute may be applied retroactively only if the legislative body has "clearly indicated the temporal reach of [the] statute" using "clear and unequivocal language." *Caveney v. Bower*, 207 Ill. 2d 82, 91, 797 N.E.2d 596, 601 (2003); *Kamysz v. Wheeling*, 65 Ill. App. 3d 629, 635, 382 N.E.2d 349, 353 (1st Dist. 1978). "Typically, when the legislature intends for a statute to be given retroactive effect it includes language similar to '[t]his Section applies to all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review.'" *White v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 2014 IL App (1st) 132315, ¶31, 18 N.E.3d 92, 100.[8] No such "clear and unequivocal" language appears in the Ordinance.

---

[7] The Ordinance was enacted on August 25, 1989 (Ord. 65-O-89) and amended in 2011 (Ord. 49-O-11) and in 2012 (Ord. 8-O-12) with language conforming to a new Evanston City Code approved on January 25, 2012 (Ord. 8-O-12). The City included the January 25, 2012 version of the Ordinance as Ex. G to the Complaint (PageID #105-10).

[8] If a legislature had expressly stated that a statute is to be applied retroactively, which the Evanston City Council did not, then the court must consider whether the due process clause

If, as here, the Ordinance does not clearly direct that it be applied to conduct occurring before its enactment—*i.e.*, before 1989—the Court must then determine if the City is impermissibly attempting to apply the statute retroactively. *Caveney*, 207 Ill. 2d at 91, 797 N.E.2d at 601. Under Illinois law, an impermissible retroactive application occurs if the statute, as applied, would increase the party's liability for past conduct. *Id.* If so, the Court must preclude liability based on that attempted retroactive application. *Id.*; *see, e.g., Doe v. Univ. of Chi.*, 404 Ill. App. 3d 1006, 939 N.E.2d 76 (1st Dist. 2010) (statute could not be retroactively applied to pre-statutory conduct even when plaintiff's injury occurred post-enactment); *Nicol v. Lavin*, 2004 WL 1881786, *7 (N.D. Ill. Aug. 13, 2004) (finding statute cannot be applied retroactively to conduct occurring prior to its enactment).

Here, the City is attempting to apply the Ordinance to the Utilities' predecessor's alleged past ownership or control of "MG Waste Oils," which allegedly were "released" at the Skokie MGP at least 60 years ago. By imposing liability today for "ownership" of "MG Waste Oils" decades ago, the City is impermissibly attempting to recover current day, emergency responder "abatement costs" for past actions for which no such liability would have existed at the time.[9] Thus, the City violates the prohibition under Illinois law against applying a law retroactively in a manner increasing a party's liability for past conduct. *See, e.g., Caveney,* 207 Ill. 2d at 91, 797 N.E.2d at 601. Therefore, the City's claim that the Utilities are liable persons pursuant to Code §

---

prohibits a retroactive application. *See Lazenby v. Mark's Constr., Inc.*, 236 Ill. 2d 83, 98, 923 N.E.2d 735, 745 (2010).

[9] The City alleges that on July 3, 2014, Evanston's Fire Chief issued an "Administrative Order" to Nicor and ComEd, which stated that it was issued pursuant to the Ordinance. Compl. ¶ 60, Ex. E. The Ordinance has no such injunctive power, it is solely a mechanism for the Fire Chief to recover certain costs under prescribed procedures. The Administrative Order says nothing about "MG Waste Oils," "black crust," coal tar, or Lowe Process oils. Moreover, the Fire Chief's "Order" was never "issued to" ComEd; it expressly states that ComEd was provided an "information copy." *Id.*

9-12-2(A)(2) also should be dismissed. Having not alleged any basis for either Nicor's or ComEd's liability under the Ordinance, Count II should be dismissed in its entirety.

### III. The Complaint Fails To State Common Law Trespass And Nuisance Claims.

#### A. The City Fails To Allege A Plausible Trespass Claim.

In Count III, the City claims that the Utilities trespassed by purportedly allowing "MG Waste Oils" and methane to migrate to City property. To state a claim for trespass, the City must plead "*negligent or intentional* conduct … which has resulted in an intrusion on [the City's] interest in exclusive possession of land." *Village of DePue v. Viacom Int'l Inc.*, 632 F. Supp. 2d 854, 865 (C.D. Ill. 2009) (emphasis added). The City fails to meet that standard.

To the extent the City believes it can hold the Utilities liable for a predecessor company's conduct over 60 years ago, it fails to allege that any migration of contaminants was intentional or negligent. *Id.*; *see also* Restatement (Second) of Torts §166, "Non-liability for Accidental Intrusions" ("Except where the actor is engaged in an abnormally dangerous activity, an *unintentional and non-negligent entry* on land in the possession of another, or causing a thing or third person to enter the land, *does not subject the actor to liability to the possessor*, even though the entry causes harm to the possessor.") (emphasis added). Notably, the City does not plead any facts showing how the Utilities' predecessor's operation of the former Skokie MGP in the first half of the twentieth century constituted intentional or negligent[10] conduct by the Utilities or abnormally dangerous or ultrahazardous activity, as required under Illinois law. *See In re Chi. Flood Litig.*, 176 Ill. 2d 179, 204, 208-12, 680 N.E.2d 265, 277-81 (1997).

---

[10] To plead negligence, a plaintiff must allege facts showing the defendant: "(1) owed him or her a duty of due care; (2) breached that duty; and (3) that this breach was the proximate cause of his or her injuries." *Rahic v. Satellite Air-Land Motor Serv.*, 2014 IL App (1st) 132899, ¶19, 24 N.E.3d 315, 321. The City does not allege these necessary elements as to either Utility.

In *DePue*, the court dismissed similar claims for trespass (and claims for private and public nuisance) asserted by the Village of DePue. The Village had alleged that industrial facilities within the Village operated by the defendants' corporate predecessors from 1903 until the late 1980s leached contamination into soil and groundwater, including on the Village's land. 632 F. Supp. 2d at 864-65. The defendants moved to dismiss the Village's claims, arguing that the Village had failed to point to any *tortious conduct*. *Id*. at 864-65. Like the City's allegations here, the Village argued that it had sufficiently stated its common law claims based on its allegations that the defendants had caused contamination to migrate onto its land, and because the defendants had failed to remediate that alleged contamination. *Id*.

The *DePue* court held that the Village's allegation of "'run off and downhill migration of the toxic metals…from the site into the Village [and its property]'… is insufficient to state a claim for trespass because the Village, again, does not point to any *tortious conduct* by Defendants. *Merely pointing to the migration of hazardous substances is not enough*." *Id*. at 865 (emphasis added). The court dismissed all of the common law claims, holding that "[e]ven under the liberal notice pleading standard applicable in federal court, a complaint must allege a factual basis sufficient to state a claim that is plausible on its face…. The Village's allegations of common law nuisance and trespass fall short of this standard." *Id.* at 864.[11] This Court should dismiss the City's trespass claim (and remaining common law claims) for the same reason.[12]

---

[11] The court allowed the Village leave to replead, but made clear in the dismissal order that to state a claim, the Village must point to specific tortious conduct by the defendants. The Village attempted to replead, but the amended claims were dismissed with prejudice under Rule 12(b)(6) because they were barred by the statute of limitations. *Village of DePue v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 784-85 (C.D. Ill. 2010).

[12] The City may attempt to salvage its common law claims by asking this Court to disregard its inadequate pleadings and the well-reasoned holdings in *DePue*, and point to a recent decision that allowed the City's common law claims against the owners of a leaking underground tank located in the City to survive a motion to dismiss. *City of Evanston v. Texaco, Inc.*, 19 F. Supp.

Finally, and significantly, even if the City had alleged facts to show tortious conduct on the part of the Utilities or their predecessors, the City's claim that the contamination at issue results from "MG Waste Oils" is not plausible, as discussed above. For that additional reason, the trespass claim should be dismissed. *See Brooks*, 578 F.3d at 581.

### B. The City's Private and Public Nuisance Claims Fail For the Same Reasons.

In Counts IV and V, the City alleges that the "MG Waste Oil" and methane "constitute a [private] nuisance which has substantially interfered with the City's use and enjoyment" of its land (Compl., Count IV ¶ 68), and "a public nuisance, which unreasonably interferes with the public's rights." *Id.*, Count V ¶ 68.

To state a claim for private nuisance, the City must allege "a substantial invasion of another's interest in the use and enjoyment of his or her land. The invasion must be: [i] substantial, [ii] *either intentional or negligent*, and [iii] unreasonable." *In re Chi. Flood Litig.*, 176 Ill. 2d at 204, 680 N.E.2d at 277 (emphasis added); *see DePue*, 632 F. Supp. 2d at 865 (holding "[t]he Site's mere existence, absent some specific unreasonable conduct by Defendants, is not a proper basis for a nuisance claim.").[13] To state a claim for public nuisance, the City must

---

3d 817 (N.D. Ill. 2014). In *Texaco*, however, the City alleged that the defendants allowed an underground tank to continue to leak onto its property, despite an investigation and finding by the State in the early 2000s that the tank needed to be addressed, and had abandoned the leaking tanks after being put on notice. *Id.* at 821. In this case, to the contrary, the City does not allege any facts showing that, during the MGP operational period, ComEd or Nicor: (a) knowingly allowed a release of contaminants; (b) was in contravention of any law or government inspection; or (c) was aware of the methane generation or "black crust" that the City alleges.

[13] *See also* Restatement (Second) of Torts §822 General Rule (reaffirming that "[o]ne is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, *and the invasion is either (a) intentional and unreasonable*, or (b) unintentional and otherwise actionable under the rules controlling liability for *negligent or reckless conduct*, or for abnormally dangerous conditions or activities.") (emphasis added).

"establish that the defendant has unreasonably interfered with a public right." *DePue*, 632 F. Supp. 2d at 864. The court in *DePue* held that "under both [public and private] theories of nuisance, the plaintiff must point to *tortious conduct* by the defendant." *Id.* at 865.

As discussed above, the City fails to allege any negligent or intentional conduct attributable to ComEd or Nicor, and thus its nuisance claims should be dismissed. *See id.*

The City's nuisance claims also fail for the same, additional reason as the trespass claim—under the *Iqbal/Twombly* standard, the City's claims are not plausible as pleaded (*see* Section I). For this additional reason, the City's nuisance claims against ComEd and Nicor should be dismissed. *See Brooks*, 578 F.3d at 581.

### C.  The City Fails To State A Claim For Punitive Damages.

Even if some of the City's common law tort claims may proceed, the City's claim for punitive damages fails because none of the purportedly wrongful conduct occurred within the five-year statute of limitations.[14] Indeed, the Complaint unambiguously alleges that the Skokie MGP ceased operations *more than six decades ago*. Compl. ¶ 36. The long-ago conduct associated with this now-closed facility, whether wrongful or not at the time of its occurrence, cannot support imposing punitive damages on successor companies more than half a century after the fact.

As the Supreme Court has explained, "compensatory damages and punitive damages … serve distinct purposes"; while "[t]he former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct, … [t]he latter, which have been described as 'quasi-criminal,' operate as 'private fines' intended to punish the defendant and to deter future wrongdoing." *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S.

---

[14] The City seeks to recover punitive damages under its common law theories (Counts III through V). The applicable limitations period for all of these claims is no more than five years. *See* 735 ILCS 5/13-205 (imposing a general five-year limitations period).

424, 432 (2001); *see Fox v. Am. Alt. Ins. Corp.*, 757 F.3d 680, 684 (7th Cir. 2014) (punitive damages are intended "not to compensate the plaintiff for injury but to punish the tortfeasor").

That being so, statute-of-limitations accrual principles developed for purposes of ensuring injured parties fair access to compensation do not logically extend to claims for punitive damages. While it is one thing to allow victims of ancient conduct to recover fully for injuries that do not manifest until many years later, it is quite another to punish a company for ancient conduct when the perpetrators have long since left the company and the burden of punitive damages will fall on shareholders who cannot in any sense be said to have profited from the misconduct.

Accordingly, punitive damages are conceptually linked to the timing of *the wrongful acts*, not the timing of *the injuries*. *See, e.g.*, *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1336 (11th Cir. 1999) (in environmental-tort case, conduct relevant to punitive damages was only that falling within the four-year limitations period preceding the filing of suit); *see also Fisher v. Space of Pensacola, Inc.,* 483 So. 2d 392 (Ala. 1986) (although plaintiff continued to suffer injuries as a result of defendant's conduct, plaintiff could not recover punitive damages because "[t]he wantonness alleged did not occur during the statutory period").

The principle recognized expressly in *Johansen* and *Fisher*—that punitive damages claims run from the date of the wrongful conduct rather than the resulting injury—has been repeatedly endorsed by the Supreme Court and the Seventh Circuit. As the Supreme Court has explained, actions that "go beyond compensation" by seeking to impose penalties "intended to punish, and label defendants as wrongdoers" must be strictly constrained by the statute of limitations that runs from the date of the relevant wrongdoing. *Gabelli v. SEC*, 133 S. Ct. 1216,

1223 (2013); *see also Landgraf*, 511 U.S. at 281 ("Retroactive imposition of punitive damages would raise a serious constitutional question.").[15]

Thus, in *Gabelli* the Court held that a purported delay by a plaintiff in discovering an injury did not extend the statute of limitations when penalties were at stake. In short, as the Seventh Circuit subsequently explained, under *Gabelli* the time to pursue penalties "begins with the violation, not with a public agency's discovery of the violation." *United States v. Midwest Generation, LLC*, 720 F.3d 644, 646 (7th Cir. 2013); *id.* at 648 ("[E]nduring consequences of acts that precede the statute of limitations are not independently wrongful."). *Gabelli* and *Midwest Generation* control here. There is no doubt that the City's punitive damages claims seek to impose punishment upon the Utilities for acts that occurred far outside the five-year statute of limitations. *See Fox*, 757 F.3d at 684.

To the extent the City seeks to circumvent the statute of limitations' bar on punitive damages by alleging that the Utilities failed to "cooperate with the City's [post-2012] efforts" to investigate (Compl. at ¶54), this argument also fails. Nowhere has the City alleged that the Utilities had any duty to "cooperate" with the City's inquiries or requests in this matter. And in any event, a party's "fail[ure] to cooperate" with an investigation is not an affirmative act

---

[15] The due process concerns that revolve around the imposition of punitive damages for conduct that occurred decades ago are particularly heightened here, given that Nicor *did not even exist* at the time of the misconduct alleged by the City and the MGP's former owner/operator did not merge into ComEd until after MGP operations ceased. Compl. ¶¶ 23-26, 36. As the Complaint makes clear, the Skokie MPG ceased operations "in or about the early 1950s," Nicor was not created until 1954, and ComEd did not come into ownership until 1953. *Id.* Under the Due Process Clause, punitive damages are allowable only to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 569 (1996). When, as here, the alleged misconduct occurred more than half a century ago, when the facility in question was operated by a different company (and specifically by individual employees of that company who are likely long dead), no punishment or deterrence interest exists to justify the application of punitive damages against the Utilities. Simply put, the Utilities and their employees have done nothing wrong.

evincing "fraud, actual malice, or deliberate violence or oppression" or "wanton disregard of the rights of others," as is required to support punitive damages under Illinois law. *David Mizer Enters., Inc. v. Nexstar Broadcasting, Inc.*, 2015 WL 469423, *3 (C.D. Ill. Feb. 3, 2015) (striking punitive damages claim based on allegations that the defendant "did nothing to prevent" harm from befalling plaintiff and "failed to cooperate" in resolving the dispute); *see Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 511 (7th Cir. 1997) (claim for punitive damages under Illinois law requires affirmative "intentional, outrageous misconduct").

## IV.     The City Fails To State A Claim That Nicor Breached The Franchise Agreement.

In Count VI, the City alleges that Nicor breached a 1982 franchise agreement allowing Nicor to construct, operate, and maintain a gas distribution system in Evanston for a 50-year term—1982 through 2032. *See* Compl., Ex. H, § 1. The "agreement" is in the form of a City ordinance, which Nicor accepted. *Id.* § 4. The City's claim fails because it is contrary to the agreement's plain language and also improperly seeks to impose retroactive liability.

As with any breach of contract claim, "the meaning of the contract 'must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language.'" *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) (quoting *Johnstowne Centre P'ship v. Chin*, 458 N.E.2d 480, 481, 99 Ill. 2d 284, 287 (1983)). Moreover, because the franchise agreement is embodied in an ordinance, "an intention that an ordinance have retrospective effect must be expressed by clear and unequivocal language. Any doubt is therefore resolved against retroactivity and in favor of prospectivity." *Kamysz*, 382 N.E.2d at 353, 65 Ill. App. 3d at 635; *see also supra* at 18-19.

The City alleges that Nicor breached Section 2 of the agreement, which provides that:

> All pipes, mains, conductors and other appliances, including connections with service pipes, **_hereafter laid_** in streets, alleys, avenues or other public places, shall be laid under the supervision of the Director of Public Works or such other duly authorized agent of the Municipality as the City Council may from time to time designate. All pipes, mains, conductors and other appliances **_shall be so located_** as not to injure unnecessarily any drains, sewers, catch basins, water pipes, pavements, or other like public improvements, but should any drain, sewer, catch basin, water pipe or other live public improvement be injured **_by such location_**, [Nicor] shall forthwith repair the damage caused by such injury …, and in default thereof the Municipality may repair such damage and charge the cost thereof to, and collect the same from [Nicor].

Compl., Ex. H, § 2 (emphasis added).

The City fails to state a claim under Section 2 for two reasons. First, the entirety of Section 2 is forward looking. The topic sentence provides that "[a]ll pipes … hereafter laid … shall be laid under the supervision of the Director of Public Works." *Id.* The second sentence then provides, again in the future tense, that "[a]ll pipes … shall be so located as not to injure unnecessarily" any public improvements. *Id.* The City does not claim injury from any pipes Nicor laid or located after 1982. Instead, the City alleges that "MG Waste Oils" were released from the former Skokie MGP, which "ceased operation in or about the early 1950s." Compl. ¶ 36. The Skokie MGP and any related pipelines predated the franchise agreement by at least 30 years. Far from providing for retroactive application clearly and unequivocally, Section 2 expressly provides that it is prospective only—applying only to pipes "hereafter laid."

Second, Section 2 addresses a limited issue—where pipes "shall be … located"—and provides a remedy for damage caused "by such location." Compl., Ex. H, § 2; *see* Evanston City Code § 7-4-5-1(A) (establishing location requirements for laying gas mains). The City cannot stretch Section 2 to cover its claim here. Rather than attacking the *location* of distribution pipes, the City alleges that Nicor "fail[ed] to *maintain* that portion of the Skokie MGP's distribution

infrastructure located within the City so as to prevent the leakage of MG Waste Oils into the environment." Compl., Count VI ¶ 70 (emphasis added). Section 2 says nothing about maintaining pipes, let alone pipes that predated the franchise agreement by at least 30 years. The Complaint does not even allege that any pipe leaks occurred after 1982 in the first place.

The City also alleges that Nicor breached Section 3, which requires Nicor to indemnify the City for expenses the City may incur "for or by reason of the use and occupation of any street, alley, avenue or other public place in the Municipality by [Nicor] *pursuant to the terms of this ordinance* or legally resulting from the *exercise by [Nicor] of any of the privileges herein granted*." *Id.*, Count VI ¶ 71 (emphasis added). Again, the franchise ordinance's terms and privileges are all prospective, addressing the 1982-2032 time period. *Id.*, Ex. H, § 1; *see also id.* § 5 (specifying that references to Nicor in the franchise ordinance include its "successors and assigns," with no mention of predecessors); *id.* § 6 ("[T]his ordinance shall … cancel all of the obligations" upon Nicor "or any predecessor companies" under "existing or prior grants."). As with Section 2, nothing in Section 3 clearly and unequivocally provides for retroactive liability.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the City's latest Complaint for failure to state a claim.

Dated:  July 25, 2016                      Respectfully submitted,

                                          NORTHERN ILLINOIS GAS COMPANY,
                                             d/b/a NICOR GAS COMPANY


Mark R. Ter Molen                         By: /s/  Mark R. Ter Molen
J. Gregory Deis                                   One of its Attorneys
Jaimy L. Hamburg
Matthew C. Sostrin
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711

*Counsel to Northern Illinois Gas Company,*
*d/b/a Nicor Gas Company*


Gabrielle Sigel                           COMMONWEALTH EDISON COMPANY
Andrew W. Vail
Jenner & Block LLP
353 N. Clark Street                       By: /s/  Gabrielle Sigel
Chicago, Illinois 60654                           One of its Attorneys
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Counsel to Commonwealth Edison Company*

**CERTIFICATE OF SERVICE**

I, Mark R. Ter Molen, hereby certify that on July 25, 2016, I electronically filed the foregoing **Memorandum of Law in Support of Joint Motion to Dismiss of Defendants Northern Illinois Gas Company and Commonwealth Edison Company** via the Court's CM/ECF system, which will deliver electronic notice of filing to all counsel of record.

/s/  Mark R. Ter Molen