# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF EVANSTON,<br>an Illinois municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | 16 C 5692 |
| v. | ) ) | Judge John Z. Lee |
| NORTHERN ILLINOIS GAS<br>COMPANY, an Illinois corporation,<br>and COMMONWEALTH EDISON<br>COMPANY, an Illinois corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff City of Evanston has sued Defendants Northern Illinois Gas Company ("Nicor") and Commonwealth Edison Company ("ComEd"), alleging violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* (Count I). In addition to its RCRA claim, Plaintiff brings a variety of state and municipal claims, including a claim for violations of Evanston Code of Ordinances § 9-12-1 *et seq.* (Count II) and claims under Illinois law for trespass (Count III), private nuisance (Count IV), public nuisance (Count V), and breach of contract (Count VI). Plaintiff seeks a combination of injunctive, declaratory, and compensatory relief, as well as civil penalties in connection with Count I and punitive damages in connection with Counts III through V.

Nicor and ComEd (collectively, "Defendants") have moved to dismiss all six counts of the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendants have also moved to dismiss Plaintiff's

requests for civil penalties and punitive damages. For the reasons stated herein, the Court grants Defendants' motion to dismiss Count II and to dismiss the request for civil penalties with respect to Count I. To the extent Defendants' motion seeks to dismiss the remaining counts and to dismiss Plaintiff's request for punitive damages with respect to Counts III through V, the motion is denied.

## Factual Background[1]

The Skokie Manufactured Gas Plant ("Skokie MGP") was built in 1910 and is located just outside the City of Evanston. Compl. ¶ 35, ECF No. 1; *id.*, Ex. A. When it was in operation, the Skokie MGP employed a process for enhancing the caloric value of manufactured gas using oil and water gas. *Id.* ¶ 37. This manufacturing process left behind dense, oily waste materials ("MG Waste Oils") that were stored in above-ground tanks at the Skokie MGP's site. *Id.* ¶¶ 38–39. Some MG Waste Oils also condensed along the inside of the pipelines comprised in the Skokie MGP's distribution infrastructure, which was used to transport manufactured gas through Evanston. *Id.* ¶¶ 2, 42–43.

The Skokie MGP ceased operations in the early 1950s. *Id.* ¶ 36. Since that time, according to Plaintiff, MG Waste Oils have leaked out of the Skokie MGP's above-ground tanks and distribution pipelines into the soil and groundwater at James Park, Dawes Elementary School, Levy Senior Center, and surrounding properties in Evanston. *Id.* ¶¶ 2, 10, 41, 49. Plaintiff refers to these properties as

---

[1] The following facts are taken from Plaintiff's complaint and the documents attached thereto, and they are accepted as true on review of Defendants' motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

the "Impacted Area." *See id*. The complaint describes the Impacted Area as "generally bounded by Oakton Street to [the] north, Dodge Avenue to the east, Mulford Street on the south and the North Shore Canal on the west." *Id.*; *see also id.*, Ex. A.

Plaintiff alleges that the released MG Waste Oils present an imminent and substantial endangerment to health or the environment in two ways. First, released MG Waste Oils have coated and penetrated the Dodge Avenue Water Line, which runs along the eastern boundary of the Impacted Area and conveys potable water to local residents. *Id.* ¶¶ 2, 4(t), 48. MG Waste Oils coating the Dodge Avenue Water Line have contaminated Evanston's drinking water and also threaten future contamination. *Id.* ¶ 2.

Second, as MG Waste Oils have degraded in the soil, groundwater, and bedrock over time, they have released methane gas as a byproduct. *Id.* ¶ 46. Methane gas has been found at high pressure and concentration within the Impacted Area. *Id.* ¶¶ 3, 12. And when methane is present at a sufficiently high pressure and concentration in a given area, it can be easily ignited, resulting in an explosion. *Id.* ¶ 12.

The methane released from MG Waste Oils first came to Plaintiff's attention in 2012. Around that time, MG Waste Oils and methane were found during an investigation of an area 1,000 feet southwest of James Park. *Id.* ¶ 51. When methane was subsequently detected in James Park itself, Plaintiff initially suspected that it might have originated from a decades-old landfill beneath the

park.  *Id.*, Ex. B ¶ 11.  But Plaintiff later determined that gas pipelines were the methane's more likely source based on concentration levels.  *Id.*, Ex. B ¶¶ 12, 15.

In May 2014, Plaintiff informed Nicor that methane had been detected at James Park and asked Nicor to provide documentation regarding distribution pipelines it operated in the park's vicinity.  *Id.* ¶ 56; *id.*, Ex. B ¶¶ 12, 15–16. According to Plaintiff, Nicor refused to cooperate with Plaintiff's request for information.  *Id.* ¶¶ 54–57.  On February 22, 2016, Plaintiff served an amended notice of intent to sue on Defendants Nicor and ComEd.[2]  *Id.* ¶ 13; *see id.*, Ex. B. The amended notice describes the endangerments posed by both the disposal of MG Waste Oils and the MG Waste Oils' degradation into methane around James Park. *Id.*, Ex. B ¶¶ 6(b)–(c), 35–48.

Plaintiff now seeks to hold Defendants responsible for the release of MG Waste Oils in the Impacted Area, on the ground that Defendants or their corporate predecessors owned and operated the Skokie MGP and its distribution infrastructure at the time the MG Waste Oils were released into the soil and groundwater around James Park.  *Id.* ¶ 9; *id.*, Count I ¶ 71.  Plaintiff alleges that Defendants knew or should have known no later than 2015 that MG Waste Oils had penetrated the Dodge Avenue Water Line, *id.* ¶ 65, and that Defendants' "negligent, willful and wanton actions" have harmed Plaintiff's property and the general public.

---

[2]    Plaintiff sent Defendants its original notice of intent to sue in October 2014 and subsequently brought claims under RCRA and Illinois law against Defendants before this Court.  The Court dismissed the claims without prejudice on February 10, 2016, in part because Plaintiff's original notice was inadequate under RCRA.  *See generally N. Ill. Gas Co. v. City of Evanston*, 162 F. Supp. 3d 654 (N.D. Ill. 2016).

*Id.*, Count III ¶ 72, Count IV ¶ 70, Count V ¶ 70. Plaintiff also alleges that the release of MG Waste Oils breaches a franchise agreement between Plaintiff and Nicor regarding the construction and maintenance of Nicor's gas distribution system. *Id.*, Count VI ¶¶ 68–72. Defendants now move to dismiss all counts of Plaintiff's complaint pursuant to Rule 12(b)(6).

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). Federal pleading standards govern all claims brought before a federal court, including any state or municipal claims falling within the court's jurisdiction. *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and must draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. A court reviewing a Rule 12(b)(6) motion may consider not only the allegations in the complaint but also any documents attached thereto. *See Geinosky v. City of Chi.*, 675 F.3d 743,

745 n.1 (7th Cir. 2012). If the parties present matters outside the pleadings in the course of litigating a Rule 12(b)(6) motion, the motion is converted into a motion for summary judgment that must be reviewed under Rule 56, unless the court excludes matters outside the pleadings from its consideration of the motion. *Id.*; Fed. R. Civ. P. 12(d).[3]

## Analysis

### I.    Count I: RCRA Claim

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). To state a claim under one of RCRA's citizen-suit provisions, a plaintiff must allege either a "violation of any [RCRA] permit, standard, regulation, condition, requirement, prohibition, or order," 42 U.S.C. § 6972(a)(1)(A), or the creation of "an imminent and substantial endangerment to health of the environment," *id.* § 6972(a)(1)(B).

Section 6972(a)(1)(B), sometimes referred to as the "endangerment" provision, states that "any person may commence a civil action on his own behalf against any person, including . . . any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling,

---

[3]    Here, Plaintiff and Defendants have attached voluminous exhibits to the briefs respectively opposing and supporting Defendants' motion to dismiss. These exhibits include documents that were attached to Plaintiff's amended notice of intent to sue but that were not attached to Plaintiff's complaint. The Court has not considered these additional materials because they are not necessary to decide Defendants' motion to dismiss.

storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* A plaintiff suing under this provision must notify the defendant of the alleged endangerment at least ninety days before filing suit. *Id.* § 6972(b)(2)(A). If the plaintiff fails to comply with this notice requirement, the plaintiff's RCRA claim must be dismissed. *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989).

In this case, Plaintiff has brought a claim under § 6971(a)(1)(B), alleging that Defendants "have engaged in the handling, treatment, storage and/or disposal" of MG Waste Oils. Compl., Count I ¶¶ 80–81. Plaintiff further asserts that MG Waste Oils "may present, and may continue to present, an imminent and substantial endangerment to public health and the environment." *Id.* Plaintiff seeks injunctive and declaratory relief as well as civil penalties under 42 U.S.C. § 6972(a). *Id.*, Count I ¶ 85.

Defendants have moved to dismiss Plaintiff's RCRA claim on two grounds. First, Defendants argue that the factual allegations in Plaintiff's complaint fail to state a plausible claim to relief under RCRA's endangerment provision. Second, they argue that Plaintiff's amended notice of intent to sue does not comply with RCRA's notice requirement because the amended notice insufficiently identifies the location of the alleged endangerment. In addition, Defendants have moved to dismiss Plaintiff's request for civil penalties under § 6972(a). The Court will address each of these issues in turn.

**A.     Factual Sufficiency of Plaintiff's RCRA Claim**

To state an endangerment claim under RCRA, a plaintiff must allege that (1) the defendant is a "past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility"; (2) the defendant has "contributed" to the handling of a solid or hazardous waste; and (3) the waste "may present an imminent and substantial danger to health or the environment." 42 U.S.C. § 6972(a)(1)(B); *see also Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002) (citing *Cox v. City of Dallas*, 256 F.3d 281, 282 (5th Cir. 2001)). "[A]t the pleading stage, it is sufficient that [the plaintiff] has identified each of the Defendants as a possible contributor to the solid waste, the release of which may present an imminent and substantial endangerment to health of [local] inhabitants or the environment in general." *Vill. of Riverdale v. 138th St. Joint Venture*, 527 F. Supp. 2d 760, 767 (N.D. Ill. 2007).

Plaintiff has adequately alleged the three elements of an endangerment claim under RCRA. First, Plaintiff alleges that Defendants are the past or present owners and operators of the Skokie MGP and its distribution infrastructure. Compl. ¶ 9. Second, Plaintiff alleges that Defendants have contributed to the handling of MG Waste Oils by "failing to properly handle dispose, contain[,] and abate" MG Waste Oils released from the Skokie MGP and its distribution infrastructure. *Id.*, Count I ¶¶ 71, 80, 82. Finally, Plaintiff alleges that MG Waste Oils and the methane produced from their degradation may present an imminent and substantial endangerment. *Id.* ¶¶ 2, 11–12; *id.*, Count I ¶¶ 72–76. The complaint further describes the specific harms the MG Waste Oils may cause, and it

supports these allegations with facts suggesting that MG Waste Oils have already contaminated the local water supply. *Id.* Together, these allegations state a claim under RCRA. *See Albany Bank*, 310 F.3d at 972–75; *Vill. of Riverdale*, 527 F. Supp. 2d at 767.

Defendants ask the Court to conclude otherwise, contending that Plaintiff has not sufficiently alleged Defendants' "contribution" to an endangerment because some allegations with regard to this element are pleaded "on information and belief." Mem. Supp. at 6–8, ECF No. 29 (citing Compl. ¶¶ 9–10, 47, 51; *id.*, Count I ¶¶ 71–76, 80–82). This argument is unavailing. Pleading on information and belief is a "practical necessity" that is "desirable and essential [ ] when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." Charles Wright & Alan Miller, 5 *Fed. Prac. & Proc. Civ.* § 1224 (3d ed. 2016); *see also Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). Here, facts showing precisely how and to what extent Defendants contributed to the handling of MG Waste Oils cannot be expected to fall within Plaintiff's knowledge; rather, such facts more likely fall within Defendants' purview because, as the complaint alleges and as the Court must assume to be true, Defendants owned and controlled the Skokie MGP and distribution infrastructure at the time MG Waste Oils were released. Compl. ¶ 9. Plaintiff's allegations are thus sufficient to survive Defendants' motion to dismiss, notwithstanding the fact that some allegations are pleaded on information and belief.

Defendants also contend that Plaintiff's allegations that they have contributed to the alleged waste and resulting danger are simply implausible and should be rejected. Rather, at least according to Defendants, the presence of methane in the affected area is more plausibly explained by the landfill beneath James Park. Moreover, Defendants argue that Plaintiff has not sufficiently investigated the methane's source in the first place and has not alleged enough facts to demonstrate contamination of the drinking water. Mem. Supp. at 8–10. Each of these additional arguments, however, speaks to a factual dispute inappropriate for resolution prior to discovery, *see Tamayo*, 526 F.3d at 1081, and none offers a basis to dismiss Plaintiff's RCRA claim at the pleading stage.

Next, Defendants argue that Plaintiff fails to adequately plead the "imminent and substantial" element of its RCRA claim because its allegations as to this element are mere legal conclusions unsupported by facts. Mem. Supp. at 11–12. This argument is also unpersuasive. Courts have given this element a broad construction, such that the imminence requirement is satisfied as long as the plaintiff alleges any substantial ongoing threat of future harm. *Albany Bank*, 310 F.3d at 972; *see also Forest Park Nat'l Bank & Trust v. Ditchfield*, 881 F. Supp. 2d 949, 976 (N.D. Ill. 2012) (collecting cases construing the elements of § 6972(a)(1)(B) broadly). As a result, to survive a motion to dismiss, a plaintiff bringing a RCRA endangerment claim need not allege an already existing harm, a harm that is certain to occur, or a harm that will manifest immediately. *Albany Bank*, 310 F.3d at 972.

In support of its allegations that MG Waste Oils may present an imminent and substantial endangerment, Plaintiff provides specific explanations of the potential dangers posed by MG Waste Oils, including present and future contamination of drinking water, as well as degradation into potentially dangerous levels of methane. *Id.* ¶¶ 2, 11–12; *id.*, Count I ¶¶ 72–76. These allegations are more than enough to support the "imminent and substantial" element of Plaintiff's RCRA claim. *See Vill. of Riverdale*, 527 F. Supp. 2d at 762–63, 767 (denying motion to dismiss RCRA claim where plaintiff broadly alleged that defendants "released solid wastes into the air and ground . . . [,] presenting an imminent and substantial endangerment to health or the environment"); *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 821–22 (N.D. Ill. 2014) (denying motion to dismiss RCRA claim where plaintiff alleged a threat of future environmental harm); *T & B Ltd. Inc. v. City of Chi.*, 369 F. Supp. 2d 989, 993 (N.D. Ill. 2005) (denying motion to dismiss RCRA claim where plaintiff broadly alleged an "imminent and substantial endangerment to health and the environment by polluting or threatening to pollute the soil [and] surface water"). Accordingly, the Court finds that Plaintiff's complaint sufficiently states an endangerment claim under § 6972(a)(1)(B) of RCRA.

## B. Notice of Intent to Sue

Before filing a lawsuit under § 6972(a)(1)(B), a plaintiff must first provide the defendant with a notice of intent to sue at least ninety days before the suit is filed. 42 U.S.C. § 6972(b)(2)(A). Failure to comply with this notice requirement is grounds for dismissal of a RCRA claim. *Hallstrom*, 493 U.S. at 31. A notice of intent to sue must be "sufficiently specific to inform the alleged violator about what

it is doing wrong, so that it will know what corrective actions will avert a lawsuit." *N. Ill. Gas Co.*, 162 F. Supp. 3d at 644 (quoting *Atl. States v. Stroh*, 116 F.3d 814, 819 (7th Cir. 1997)).

Without citing any supporting authority, Defendants assert that Plaintiff's amended notice of intent to sue is deficient because it "failed to provide sufficient information to permit [Defendants] to identify the location of the alleged endangerment." Mem. Supp. at 14; *see also* Reply at 10, ECF No. 37. In particular, Defendants take issue with Plaintiff's use and definition of the term "Impacted Area," which appears in the complaint but not in the amended notice. *Id.*

Defendants' argument, however, is swiftly undercut by a comparison of the complaint and the amended notice. The complaint specifically defines the area affected by the alleged endangerment as including James Park, Dawes Elementary School, Levy Senior Center, and their surrounding properties. Compl. ¶ 2. It then specifies that these properties are generally bounded by Oakton Street on the north, Dodge Avenue on the east, the North Shore Canal on the west, and Mulford Street on the south, and it alleges facts concerning contamination of water flowing through the Dodge Avenue Water Line. *Id.*

In much the same way, in describing the endangerments posed by MG Waste Oils and the resulting methane, the amended notice makes repeated references to James Park, Dawes Elementary School, and Levy Senior Center. Compl., Ex. B ¶¶ 35–48. The amended notice also specifically refers to distribution pipelines along Oakton Street and Dodge Avenue, under the North Shore Canal, and

"immediately south of James Park," and it refers to the Dodge Avenue Water Line multiple times. *Id.*, Ex. B ¶¶ 37–41, 44, 46–48.

Reading the complaint and the amended notice side by side, it is apparent that the two documents identify the same area as the location of the alleged endangerment. It is further apparent that the two documents describe this location with a degree of specificity sufficient to put Defendants on notice of "what [they are] doing wrong" and where the alleged harm has taken place. *N. Ill. Gas Co.*, 162 F. Supp. 3d at 644 (quoting *Atl. States*, 116 F.3d at 819). Moreover, to the extent Defendants harbor concerns that Plaintiff might later attempt to redefine the Impacted Area in order to expand its reach, those concerns should be put to rest by Plaintiff's concession that it "does not seek relief as to any property other than that identified in its Amended RCRA Notice." Resp. at 20 n.20.

For these reasons, the Court finds that Plaintiff's amended notice of intent to sue sufficiently identifies the location of the alleged endangerment. Because Plaintiff has both complied with RCRA's notice requirement and stated a plausible claim to relief, Defendants' motion to dismiss Count I is denied.

## C.    Civil Penalties Under § 6972(a)

In connection with its RCRA claim, Plaintiff requests injunctive and declaratory relief as well as civil penalties under 42 U.S.C. § 6972(a). Compl., Count I ¶ 85. Defendants have moved to dismiss the request for civil penalties on the ground that it is not authorized under RCRA for the type of claim Plaintiff has brought. Mem. Supp. at 14–15. For the reasons explained below, Defendants' motion to dismiss Plaintiff's request for civil penalties under § 6972(a) is granted.

Section 6972(a) provides that, in a citizen suit alleging an endangerment under § 6972(a)(1)(B), the district court "shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste." 42 U.S.C. § 6972(a). It further provides that, in suits brought under either of RCRA's two citizen-suit provisions, the district court "shall have jurisdiction . . . to apply any appropriate civil penalties under section 6928(a) and (g) of this title." *Id.* As such, to determine whether a plaintiff may request civil penalties in a RCRA citizen suit brought under § 6972(a)(1)(A) or (B), a court must decide whether § 6928(a) and (g) apply.

Section 6928(a) addresses civil penalties that may be imposed in an order issued by the EPA Administrator subsequent to a determination that a person "has violated or is in violation of this subchapter." 42 U.S.C. § 6928(a). In turn, § 6928(g) provides that "[a]ny person who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation." 42 U.S.C. § 6928(g). In both provisions, the phrase "this subchapter" refers to title 42, subchapter III of the United States Code, the subchapter in which § 6928 is situated.

By contrast, § 6972 is located in title 42, subchapter VII. A citizen suit alleging an endangerment under § 6972(a)(1)(B) therefore alleges a violation of subchapter VII, not subchapter III, *see Vill. of Riverdale*, 527 F. Supp. 2d at 768, and civil penalties under § 6928(a) or (g) thus are not appropriate in such a suit.

*See id.* (striking request for civil penalties in RCRA citizen suit brought under § 6972(a)(1)(B) because § 6972 appears in subchapter VII, not subchapter III); *Verse Two Props., LLC v. MedPlast Fremont, Inc.*, No. 5:14-CV-03765-EJD, 2015 WL 6955133, at *5 (N.D. Cal. Nov. 10, 2015) (dismissing plaintiff's request for civil penalties in RCRA citizen suit); *Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colo. v. Brown Grp. Retail, Inc.*, No. 08-CV-00855-LTB-KMT, 2010 WL 3430919, at *3 (D. Colo. Aug. 30, 2010) ("Interpreting Sections 6972(a) and 6928(a) & (g) according to the plain language of these statutory provisions, I conclude that there can be no award of civil penalties under RCRA in the absence of a violation of Subchapter III of the Act."); *N. Cal. River Watch v. Exxon Mobil Corp.*, No. C 10-0534 PJH, 2010 WL 3184324, at *6 (N.D. Cal. Aug. 11, 2010) (striking plaintiff's request for civil penalties in RCRA citizen suit); *see also Coll. Park Holdings, LLC. v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1334, 1349 (N.D. Ga. 2002) (refusing to assess civil penalties in RCRA suit brought under § 6972(a)(1)(A) where plaintiff alleged violations of subchapter IX and not subchapter III).

In support of its argument that it is indeed entitled to seek civil penalties under § 6972(a), Plaintiff cites *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817 (N.D. Ill. 2014). As in the present case, the plaintiff in *Texaco* brought a RCRA endangerment claim under § 6972(a)(1)(B). *Id.* at 821. In addressing the question whether civil penalties are available in RCRA suits brought by private plaintiffs, the *Texaco* court reasoned that "Congress made clear" in § 6972(a) that "such civil penalties may be awarded not only in enforcement suits brought by the EPA

Administrator, but also in citizen suits." *Id.* at 823–24. Based on this reasoning, the court concluded that the plaintiff was permitted to seek civil penalties under § 6972(a). *Id.*

This Court agrees in part with the *Texaco* court's reasoning: it is certainly clear that Congress intended civil penalties to be available in at least some citizen suits brought under § 6972(a). Indeed, to conclude otherwise would be to render the civil penalties clause of § 6972(a) superfluous, which is a result that should be avoided. *See O'Kane v. Apfel*, 224 F.3d 686, 689 (7th Cir. 2000); *see also Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120, 128 (N.D. Ill. 1994) (internal quotation marks and citations omitted) ("[A] district court should have jurisdiction . . . to apply any appropriate civil penalties under § 6928(a) and (g) for violations of § 6972(a). To find otherwise would render the language in question superfluous.").

But the Court disagrees with *Texaco*'s conclusion that a plaintiff suing under § 6972(a)(1)(B) is entitled to seek civil penalties under § 6972(a) absent an allegation of a violation of subchapter III. As explained above, § 6972(a) allows penalties only as permitted under § 6928(a) and (g), and those provisions expressly limit the availability of civil penalties to cases involving subchapter III violations. The Court therefore holds that where a plaintiff brings suit under § 6972(a)(1)(B) and does not separately allege a violation of subchapter III, the plaintiff is not entitled to seek civil penalties under § 6972(a). This reading of § 6972(a) gives full effect to Congress's intent to allow civil penalties in some RCRA citizen suits, because it leaves civil penalties available in many such cases. For example, a

plaintiff suing under § 6972(a)(1)(A) may allege violations of "any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A). Because the term "this chapter" encompasses subchapter III of RCRA, a plaintiff suing under § 6972(a)(1)(A) can allege a violation of any "permit, standard, regulation, condition, requirement, prohibition, or order" effective pursuant to subchapter III, in which case § 6972(a) would allow the plaintiff to seek civil penalties under § 6928(a) or (g). *Id.* Alternatively, a plaintiff suing under § 6972(a)(1)(B) can separately allege a violation of subchapter III, in which case § 6972(a) would likewise apply to allow civil penalties under § 6928(a) or (g). *See, e.g., Clorox*, 158 F.R.D. at 128 (permitting plaintiff in a RCRA suit brought under § 6972(a)(1)(B) to request civil penalties when plaintiff separately alleged violations of subchapter III). Absent allegations of a subchapter III violation, however, a plaintiff suing under § 6972(a)(1)(B) may not seek civil penalties under § 6972(a). To arrive at the opposite conclusion would render the phrase "under section 6928(a) and (g) of this title" in § 6972(a) superfluous.

For these reasons, the Court agrees with the decisions of other courts that have rejected requests for civil penalties in § 6972(a)(1)(B) cases in the absence of an alleged violation under subchapter III. *See Vill. of Riverdale*, 527 F. Supp. 2d at 768; *Verse Two Props.*, 2015 WL 6955133, at *5; *La Plata*, 2010 WL 3430919, at *3; *N. Cal. River Watch*, 2010 WL 3184324, at *6.[4] As such, Defendants' motion to

---

[4] The Court rejects Plaintiff's reliance on *City of N. Chi. v. Hanovnikian*, No. 06 C 0962, 2006 WL 1519578, (N.D. Ill. May 30, 2006), for the same reasons that the Court is

dismiss Plaintiff's request for civil penalties in Count I is granted. Plaintiff's request for civil penalties is hereby stricken from Count I.

## II.     Count II: Violation of Evanston's Hazardous Substances Ordinance

In Count II, Plaintiff alleges a claim under Evanston Code of Ordinances § 9-12-1 *et seq.* ("the Hazardous Substances Ordinance"). In pertinent part, the Hazardous Substances Ordinance authorizes the Evanston Fire and Life Safety Services Department to "remove or abate the effects of any hazardous substance incident involving the actual or threatened release of a hazardous material upon or into property or facilities in the City." E.C.O. § 9-12-2(A). Certain persons, as defined in the ordinance, may be held liable for these removal or abatement costs. *Id.*; *cf. Texaco*, 19 F. Supp. 3d at 820 (permitting claim brought under Evanston's Hazardous Substances Ordinance).

In moving to dismiss Count II, Defendants argue that Plaintiff has not sufficiently alleged the occurrence of a "hazardous substance incident." Mem. Supp. at 15–17. The Hazardous Substances Ordinance defines the term "hazardous substance incident" as:

> Any emergency circumstance involving the *sudden release or threatened release* of a hazardous substance which, in the judgment of an emergency response authority, . . . threatens immediate and irreparable harm to the environment or the health, safety, or welfare of any individual other than individuals exposed to the risks associated with hazardous substances in the normal course of their employment.

---

unpersuaded by *Texaco*. The Court also rejects Plaintiff's reliance on *Hassain v. E.P.A.*, 41 F. App'x 888 (7th Cir. 2002). The plaintiff in *Hassain* had not requested civil penalties, and the case is therefore not on point.

E.C.O. § 9-12-1 (emphasis added). In turn, the term "release," which appears in the definition of "hazardous substance incident," is defined in the Hazardous Substances Ordinance as "[a]ny actual or threatened spilling, leaking[,] pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment," subject to limited exceptions not relevant to this case.[5] *Id.*

In light of this definition, Defendants argue that Plaintiff has failed to allege a hazardous substance incident on the ground that Plaintiff has alleged neither a "sudden release" nor a "threatened release" of a hazardous substance. Mem. Supp. at 15–17; Reply at 12–14. The Court agrees. First, although Plaintiff alleges that MG Waste Oils have been released from the Skokie MGP and its distribution pipelines, *see* Compl. ¶¶ 10, 41, 43–44, 47, nowhere does Plaintiff suggest that any of these releases were "sudden" in nature.

In addition, the complaint is devoid of allegations suggesting any future "threatened releases" of MG Waste Oils from the Skokie MGP or its distribution infrastructure. It is true that Plaintiff alleges that previously released MG Waste Oils continue to migrate through soil, groundwater, and bedrock and threaten future contamination of the Dodge Avenue Water Line. *See* Compl. ¶ 2; *id.*, Count I

---

[5]    These exceptions include: "(a) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons; (b) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine; (c) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in Atomic Energy Act of 1954, if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under Section 1870 of such Act; and (d) the normal application of fertilizer." E.C.O. § 9-12-1.

¶ 71; *id.*, Count III ¶ 68. But these allegations speak only to future harm, not future releases of MG Waste Oils from the Skokie MGP or its distribution infrastructure (which, according to Plaintiff, have already taken place).

For these reasons, the Court finds that Plaintiff has alleged neither a "sudden release" nor a "threatened release" of MG Waste Oils triggering a hazardous substance incident under Evanston's Hazardous Substances Ordinance. Count II is therefore dismissed for failure to state a claim.[6]

## III. Counts III–V: Trespass, Private Nuisance, and Public Nuisance

In connection with the alleged release of MG Waste Oils in the Impacted Area, Plaintiff has brought claims for trespass, private nuisance, and public nuisance in Counts III, IV, and V, respectively. Plaintiff seeks injunctive relief, compensatory damages, and punitive damages. Defendants have moved to dismiss these counts, arguing that Plaintiff has not adequately alleged negligent or intentional tortious conduct by Defendants. Mem. Supp. at 20–23. They have also moved to dismiss Plaintiff's request for punitive damages as barred by the statute of limitations. *Id.* at 23–26. For the reasons provided below, the Court denies Defendants' motion to dismiss Counts III through V as well as their motion to dismiss Plaintiff's request for punitive damages.

---

[6] Because Defendants' motion to dismiss Count II is granted on the ground that Plaintiff has failed to allege a hazardous substance incident, the Court does not address Defendants' alternative argument that they are not entities who may held liable as "responsible parties" under the Hazardous Substances Ordinance.

### A.     Trespass Claim

In Illinois, a trespass is "an invasion in the exclusive possession and physical condition of land." *Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co.*, 668 N.E.2d 223, 230 (Ill. App. Ct. 1996) (citing *Colwell Sys., Inc. v. Henson*, 452 N.E.2d 889, 892 (Ill. 1983)).  Trespass can occur through an act that is either negligent or intentional. *Helping Others Maintain Envtl. Standards v. Bos*, 941 N.E.2d 347, 367 (Ill. App. Ct. 2010); *Dial v. City of O'Fallon*, 411 N.E.2d 217, 222 (Ill. 1980).

Defendants argue that Plaintiff's trespass claim must be dismissed because Plaintiff has not alleged either negligent or intentional conduct.  Mem. Supp. at 20–21.  In support, Defendants cite *Village of DePue, Illinois v. Viacom International, Inc.*, 632 F. Supp. 2d 854 (C.D. Ill. 2009).  The court in *DePue* dismissed a claim for trespass under Illinois law where the claim was supported solely by an allegation that "run off and downhill migration of the toxic metals . . . from the site into the Village of DePue and the Village property [was] a continuing common law trespass for which [defendants were] liable."  632 F. Supp. 2d at 865 (quoting Am. Compl. ¶ 23).  In dismissing the claim, the court held that this single allegation was insufficient because it pointed "merely [ ] to the migration of hazardous substances" and did not allege any tortious conduct by the defendants.  *Id.*

The allegations in the present case are distinguishable from the single allegation of trespass presented to the court in *DePue*.  Here, the complaint includes detailed factual allegations explaining that MG Waste Oils caused harmful contamination by leaking from the Skokie MGP and its distribution pipelines, which were owned and operated by Defendants at the time of the leaking.  Compl.

¶¶ 2, 9, 10, 41–50. Plaintiff also alleges that Defendants acted negligently, had knowledge of the contaminants' entry onto Plaintiff's property, and "caused and allowed, and continue to cause and allow, contaminants to migrate and enter soil, groundwater and the bedrock formation in, under and around the Impacted Area." *Id.*, Count III ¶¶ 68, 70, 72. In other words, unlike the complaint in *DePue*, Plaintiff's complaint alleges negligent or intentional conduct causing contaminants to enter Plaintiff's property, and it therefore states a claim for trespass under Illinois law. *Cf. Texaco*, 19 F. Supp. 3d at 826–27 (denying motion to dismiss trespass claim under Illinois law where plaintiff alleged that defendants had negligently leaked contaminants onto plaintiff's property). Defendants' motion to dismiss Count III is accordingly denied.

## B. Nuisance Claims

Under Illinois law, a private nuisance is an invasion of another's interest in the use and enjoyment of his or her land. *In re Chi. Flood Litig.*, 680 N.E.2d 265, 277 (Ill. 1997). The invasion must be substantial, unreasonable, and either negligent or intentional. *Id.* Similarly, a public nuisance is a substantial and unreasonable interference with a public right. *City of Chi. v. Am. Cyanamid Co.*, 823 N.E.2d 126, 131 (Ill. 2005). Under the federal notice pleading standards, a nuisance claim under Illinois law can survive a motion to dismiss pursuant to Rule 12(b)(6) where the plaintiff alleges that the defendant's conduct threatens the plaintiff's property with environmental contamination. *See Texaco*, 19 F. Supp. 3d at 825–26 (holding that plaintiff stated a private nuisance claim under Illinois law "[b]y alleging that petroleum, gasoline, and their carcinogenic byproducts migrated

and continue[d] to migrate from the Texaco station to [plaintiff's] adjacent property"); *Echternach v. D.H. Martin Petroleum Co.*, No. 97 C 3802, 1997 WL 627646, at *4 (N.D. Ill. Sept. 30, 1997) (holding that plaintiff stated a public nuisance claim under Illinois law by alleging releases of petroleum that had "infiltrated the soil, sewer system, groundwater, surface water, and air in the area surrounding the [defendant's] property" and "present[ed] an immediate threat to health and the environment"); *Dominick's Finer Foods, Inc. v. Amoco Oil Co.*, No. 93 C 4210, 1993 WL 524808, at *1, *8 (N.D. Ill. Dec. 15, 1993) (holding that plaintiff stated a nuisance claim under Illinois law by alleging that "gasoline, fuel oil, and waste oil . . . leak[ed] from the underground tanks" at defendant's facility and contaminated the soil on plaintiff's property).

In this case, Plaintiff has alleged that MG Waste Oils leaking from the Skokie MGP and distribution infrastructure, which are or were owned and operated by Defendants, have contaminated the soil, groundwater, and bedrock on Plaintiff's property. Compl. ¶¶ 2, 9, 49. In addition, Plaintiff has alleged that MG Waste Oils have contaminated and may continue to contaminate the local water supply. *Id.* ¶¶ 48–50. Plaintiff thus has sufficiently stated private and public nuisance claims under Illinois law. Defendants' motion to dismiss Counts IV and V is therefore denied.

### C.   Punitive Damages

In connection with its claims for trespass and nuisance, Plaintiff seeks punitive damages, among other forms of relief. Defendants argue that Plaintiff's request for punitive damages should be dismissed because "none of the purportedly

wrongful conduct occurred within the five-year statute of limitations."  Mem. Supp. at 23 (citing 735 Ill. Comp. Stat. 5/13-205).  According to Defendants, the Court should conclude that the alleged wrongful conduct occurred more than five years prior to the filing of the complaint on the basis that the complaint "unambiguously alleges that the Skokie MGP ceased operations more than six decades ago."  *Id.* (emphasis omitted) (citing Compl. ¶ 36).

But such a conclusion would be a non sequitur.  Although the complaint states that "[t]he Skokie MGP ceased operation in or about the early 1950s," Compl. ¶ 36, nowhere does it state that the migration of MG Waste Oils, on which Plaintiff's claims are based, also occurred in the early 1950s.  To the contrary, the complaint plausibly suggests that MG Waste Oils may have migrated onto Plaintiff's property within the past five years.  *See, e.g.*, Compl., Count III ¶ 68 ("Nicor and ComEd have caused and allowed, and continue to cause and allow, contaminants to migrate and enter soil, groundwater and the bedrock formation in, under and around the Impacted Area.").  Because "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute of limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point [this Court] may determine compliance with the statute of limitations based on a more complete factual record."  *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (citing *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *Early v. Bankers Life & Cas. Co.*, 959

F.2d 75, 80 (7th Cir. 1992)). Defendants' motion to dismiss Plaintiff's request for punitive damages as barred by the statute of limitations is thus denied.[7]

## IV.    Count VI: Breach of Contract

The final count of Plaintiff's complaint brings a claim for breach of contract, alleging that the release of MG Waste Oils in the Impacted Area violates a franchise agreement that Plaintiff and Nicor entered in 1982. Plaintiff bases its breach of contract claim upon §§ 2 and 3 of the agreement.

Codified in the form of an Evanston municipal ordinance, the franchise agreement grants Nicor the rights to construct, operate, and maintain a gas distribution system in the City of Evanston. *See* Compl., Count VI ¶ 68; *id.*, Ex. H. Section 2 concerns the location of Nicor's pipes and other gas distribution components. It obligates Nicor to repair, or pay for the repair costs of, "any drain, sewer, catch basin, water pipe, pavement or other like public improvement [ ] injured by such location." *Id.*, Count VI ¶ 69; *id.*, Ex. H § 2. In turn, § 3 obligates Nicor to indemnify Plaintiff for certain costs and expenses that Plaintiff "may legally suffer or incur" as a result of Nicor's exercise of privileges granted pursuant to the agreement's terms. *Id.*, Count VI ¶ 71; *id.*, Ex. H § 3.

Plaintiff alleges that Nicor is in breach of § 2 of the agreement because Nicor "fail[ed] to maintain that portion of the Skokie's MGP's distribution infrastructure

---

[7]    Because the Court rejects Defendants' statute of limitations argument as inappropriate for resolution at this stage, the Court does not address Plaintiff's counterargument that Plaintiff is not subject to the statute of limitations as a unit of government asserting public rights. *See* Resp. at 27–28. Plaintiff may raise this argument at another time if Defendants choose to raise a statute of limitations defense later in the proceedings.

located within the City so as to prevent the leakage of MG Waste Oils into the environment." *Id.*, Count VI ¶ 70.  Plaintiff further alleges that Nicor is liable under § 3 because Plaintiff has incurred "damages, costs, expenses and attorney's fees" in connection with Nicor's "placement of pipes . . . in locations in the City that have leaked MG Waste Oils into the environment and degraded to form methane." *Id.*, Count VI ¶ 72.

Nicor has moved to dismiss Plaintiff's breach of contract claim on two bases. First, Nicor argues that the codified franchise agreement cannot be retroactively applied to any of its conduct prior to the agreement's formation in 1982.  Mem. Supp. at 27–28.  As Nicor points out, the complaint alleges only that the Skokie MGP ceased operations in the early 1950s and that Plaintiff first became aware of the released MG Waste Oils around 2012, *see* Compl. ¶¶ 36, 51; it does not specify whether the alleged releases of MG Waste Oils occurred before or after 1982.

To survive a motion to dismiss, however, a plaintiff is not necessarily required to provide the exact dates of the alleged violations, as long as the complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). When conduct alleged in a complaint "straddles" the effective date of a governing statute or ordinance, "[a] retroactivity question cannot be decided at the pleading stage." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 617 (7th Cir. 2007). This is because, "accepting the allegations as true, the [ ] violation could have occurred before [the statute's or ordinance's] effective date; discovery may or may

not bear this out." *Id.* at 623.  Here, discovery may reveal that the alleged releases of MG Waste Oils occurred only after 1982, in which case "the issue of retroactivity may ultimately be irrelevant." *Id.*  Nicor's argument against retroactive application of the codified franchise agreement is therefore inapposite at this stage of the proceedings.

Next, Nicor takes issue with Plaintiff's breach of contract claim to the extent it is based on § 2 of the agreement.[8]  In particular, Nicor argues that § 2 "addresses a limited issue—where pipes 'shall be . . . located'—and provides a remedy for damage caused by such location." Mem. Supp. at 27.  Plaintiff has failed to allege a breach of this provision, according to Nicor, because the complaint attacks "Nicor's fail[ure] to maintain [pipelines] located within the City" instead of directly attacking the pipelines' location.  *Id.* at 27–28 (quoting Compl., Count VI ¶ 70).  In response, Plaintiff argues that it has plausibly alleged a breach of § 2 based on harms "caused by [the] location" of Nicor's pipes, presumably reasoning that harms caused by the release of MG Waste Oils from certain pipes would have been mitigated if those pipes had been differently located.  Resp. at 29.

In essence, this dispute revolves around the question of how to interpret what it means for something to be "injured by [the] location" of Nicor's pipes under § 2 of the agreement.  Compl., Ex. H § 2.  In interpreting a contract, a court's primary objective is to determine and give effect to the intention of the parties.  *Harmon v.*

---

[8]     Apart from the retroactivity argument discussed above, which Nicor aims at both § 2 and § 3 of the agreement, Nicor's motion to dismiss does not appear to challenge Plaintiff's breach of contract claim to the extent it is based on § 3.  *See* Mem. Supp. at 26–28; Reply at 28–30.

*Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013). When a contract's language is unambiguous, the court must give the language its plain and ordinary meaning. *Id.* Contract language is ambiguous "when it is reasonably susceptible to different constructions." *Kaplan v. Shure Bros.*, 266 F.3d 598, 605 (7th Cir. 2001). "[O]nce contractual ambiguity is established, the task of interpreting the contract's meaning generally becomes a question of fact for the jury." *Lesaint Logistics, LLC v. Electra Bicycle Co., LLC*, 146 F. Supp. 3d 972, 976–77 (N.D. Ill. 2015) (citing *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005)).

Nicor makes no attempt to explain why the language of the franchise agreement is not reasonably susceptible to Plaintiff's interpretation. As such, Nicor has not persuaded the Court at this point that the agreement's language is unambiguous, much less that Nicor's interpretation of the agreement's language is unambiguously correct. Accordingly, Nicor's motion to dismiss Count VI is denied.

## **Conclusion**

For the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [27]. Count II is dismissed without prejudice. In addition, the Court grants Defendants' motion to dismiss Plaintiff's request for civil penalties under RCRA. The request for civil penalties in Count I of the complaint is accordingly stricken. In all other respects, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**                    **ENTERED   1/17/17**

_____
**John Z. Lee**
**United States District Judge**