1          IN THE UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   CITY OF EVANSTON, an Illinois    )  Docket No. 16 C 5692
    Municipal Corporation,           )
4                                     )
                         Plaintiff,   )
5                                     )
                  v.                  )  Chicago, Illinois
6                                     )  July 18, 2018
    NORTHERN ILLINOIS GAS COMPANY,    )  2:00 o'clock p.m.
7   an Illinois Corporation; and      )
    COMMONWEALTH EDISON COMPANY,      )
8   an Illinois Corporation,          )
                                      )
9                        Defendants.  )

10            TRANSCRIPT OF PROCEEDINGS - MOTION
            BEFORE THE HONORABLE JOHN Z. LEE
11
    APPEARANCES:
12
    For the Plaintiff:          SPERLING & SLATER, by
13                              MR. THOMAS DAVID BROOKS
                                MR. TREVOR K. SCHEETZ
14                              MR. HARVEY JOEL BARNETT
                                MS. ALLISON G. MARGOLIES
15                              55 West Monroe Street
                                Suite 3200
16                              Chicago, Illinois 60603

17                              JEEP & BLAZER, LLC, by
                                MR. JEFFERY D. JEEP
18                              3023 North Clark Street
                                Suite 214
19                              Chicago, Illinois 60657

20

21
                    ALEXANDRA ROTH, CSR, RPR
22                   Official Court Reporter
                  219 South Dearborn Street
23                        Room 1224
                  Chicago, Illinois 60604
24                    (312) 408-5038

25

```
 1    APPEARANCES:   (Continued)

 2    For Defendant Northern           MAYER BROWN LLP, by
      Illinois Gas:                    MR. MARK R. TER MOLEN
 3                                      MS. JAIMY LEVINE HAMBURG
                                       MR. MATTHEW C. SOSTRIN
 4                                      71 South Wacker Drive
                                       Chicago, Illinois 60606
 5
      For Defendant Commonwealth       JENNER & BLOCK, LLP, by
 6    Edison:                          MS. GABRIELLE SIGEL
                                       MR. ANDREW WILLIAM VAIL
 7                                      353 North Clark Street
                                       Chicago, Illinois 60654
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  (Proceedings had in open court:)

2  THE COURT:  All right.  So who will be arguing the

3  motion on behalf of the defendants?

4  MR. TER MOLEN:  Your Honor, my colleague Mr. Sostrin

5  will be arguing.

6  THE COURT:  I'm sorry.  Your name is again?

7  MR. SOSTRIN:  Matthew Sostrin.

8  THE COURT:  Okay.  And who will be arguing on behalf

9  of the plaintiff?

10  MR. BROOKS:  I will, your Honor, Thomas Brooks.

11  THE COURT:  Okay.  All right.  Since it's defendants'

12  motion, I will hear from defense counsel.

13  MR. SOSTRIN:  Your Honor, before I begin can you

14  switch over the system to our?  We might show a document.

15  Thank you.

16  Good afternoon, your Honor.

17  The utility has moved to amend their answer to

18  paragraph 42 of the complaint to conform with the evidence that

19  was disclosed in discovery in this case.  When the utilities

20  initially filed their answers, I believe it was back in

21  February of 2017, we did so based on the information that we

22  had available to us at the time.  At the time we had a -- you

23  know, a general understanding that the Skokie MGP did supply

24  some manufactured gas to areas in Evanston, but we didn't have

25  the benefit of, you know, the detailed analysis of the pipeline

1    records that we, you know, discussed this morning and discussed

2    yesterday.  And again, these are, you know, 90-year-old records

3    from several corporate predecessors ago we're talking about

4    here.

5           When we got into fact discovery with the city, the

6    parties initially agreed among themselves that their document

7    productions would be focused on the impacted area around James

8    Park.  So Oakton, Dodge, Mulford, and maybe half a block within

9    that.  For most of fact discovery, the parties weren't focused

10   on Howard Street, which is about half a mile south of where

11   James Park and the impacted area is.

12          So in kind of the initial stages of discovery in this

13   case, you know, the utilities produced documents to the city,

14   you know, about these historic gas lines.  And we've given them

15   previously, even before discovery started, voluntarily some of

16   these same of documents.

17          And then in early this year, 2018, as Mr. Fox was

18   preparing for his 30(b)(6) deposition, as the Court heard this

19   morning, he had uncovered these additional documents at Howard

20   Street that show this connection to Peoples Gas, which again,

21   you know, last year the parties were focused on the impacted

22   area.  You know, we weren't focused on, you know, the records

23   relating to, you know, the connection of Peoples --

24          THE COURT:  Where did Mr. Fox find the records?

25          MR. SOSTRIN:  As I think he testified this morning,

1   you know, Nicor keeps, you know, historic records including,

2   you know, of corporate predecessors by -- you know, by -- by

3   location or by area in the city.  And in preparing for his

4   30(b)(6) deposition, he had his people go back and, you know,

5   look for additional records that might be relevant.  And that's

6   when he came across these additional records relating to the

7   connection with Peoples at Howard Street.

8          THE COURT:  And was that in late 2017 or early 2018

9   that they found the records?

10         MR. SOSTRIN:  That was early 2018.  I think we did a

11  supplemental production to the city in early March.  I think it

12  was March 2, a week or two before Mr. Fox's 30(b)(6)

13  deposition.  And we had also done some other earlier

14  supplemental productions in January.  Off the top of my head,

15  I'm not sure that there were any Howard documents in there.

16  But there may have been.  I'm not hundred percent sure on that.

17         But it was in early 2018, as Mr. Fox was preparing for

18  his 30(b)(6) deposition, when we found these additional

19  documents that are, you know, outside the -- what the parties

20  have been calling the impacted area in this case, that shed

21  some additional light on sort of the function of the 24-inch

22  gas line on Dodge.

23         And so we produced the documents to the city.  Mr.

24  Fox, you know, testified in his first deposition in March of

25  2018 as a 30(b)(6) witness and as a regular fact witness about

1    the documents.  And, you know, immediately thereafter, just to

2    be, you know, completely forthcoming, we -- well, first we

3    sought the city -- we conferred with the city on this issue.

4    And then we moved the Court for leave to amend, just to comply

5    with and conform with what Mr. Fox had testified to at his

6    deposition, which as of March 2018, if the Court heard this

7    morning, you know, based on the records he had reviewed at that

8    time, he couldn't say, you know, whether -- to what extent

9    these gas lines carried manufactured gas from Skokie MGP.

10        So we -- you know, Nicor and ComEd both sought to

11   amend their answers to say, you know, precisely what Mr. Fox

12   had testified to.  And, you know, the key point here, I think,

13   is there is no prejudice to the city from the prosed amendment.

14        Dan, if you could pull up page 9?

15        This is the city's response brief to our motion for

16   leave to amend.  And you can see in the call-out, the city says

17   that the utilities admitted that certain distribution pipelines

18   in Oakton and Dodge transported gas manufactured at Skokie MGP.

19   But they never identified the specific pipelines under those

20   streets to which they referred.  The city was entitled, indeed

21   obligated, to pursue the issue of precisely which pipelines

22   transported Skokie MGP gas, and the city did so.

23        So throughout fact discovery, you know, this was a --

24   you know, an issue that was explored by both parties throughout

25   discovery.  The city hasn't identified, you know, any

1    additional fact discovery that they, you know, would need as a
2    result of these answers.
3         When it came time for Mr. Hendron to issue his expert
4    report, he didn't rely on the answer.  It's not cited anywhere
5    in his report.  It's not in his reliance materials.  He, you
6    know, attempted to analyze the same historic engineering
7    records that Dan Fox reviewed, and he offered some opinions on
8    that.
9         And, you know, based on his initial -- his review of
10   those records, we heard yesterday from Mr. Hendron that he
11   isn't entirely sure about when, you know, manufactured gas
12   would have actually flowed down the Dodge gas line, which again
13   is consistent with what the utilities -- with what Mr. Fox
14   testified in his March deposition, and what the utilities in
15   their motion for leave are seeking to amend their answer to.
16        And just one last point.  Not only does the city
17   concede that the utilities did not admit that any specific
18   pipeline carried manufactured gas, you know, in particular the
19   24-inch line here.  We've heard, you know, from the past two
20   days about how many different pipelines are kind of in this
21   area.
22        But even beyond, you know, whether a particular
23   pipeline carried manufactured gas, obviously the city would
24   still analyze the dates, when.  And, you know, there is nothing
25   in the utilities' answer that speaks to that question.  So all

1    along throughout this case, both parties knew that this was an

2    issue that, you know, the city having burden of proof in this

3    case, would have to prove as part of its claims.

4            And, you know, they addressed it through fact

5    discovery, through Hendron's expert report.  And the fairly

6    straightforward amendment that the utilities are proposing to

7    file just to conform to the evidence that was disclosed in fact

8    discovery isn't prejudicial to the city in any way.

9            THE COURT:  Okay.  Thank you.

10           Mr. Brooks.

11           MR. BROOKS:  Yes, thank you, your Honor.

12           I think to put things in perspective, it might help to

13   walk through the chronology of what occurred here.  As your

14   Honor is familiar, the complaint in the case was filed by the

15   city in 2016.  Utilities moved to dismiss.  Your Honor ruled on

16   the motion to dismiss in January of 2017.  I believe there was

17   a state law count that was dismissed, but the majority of the

18   complaint, including the RCRA claim that's been the focus,

19   stood.  And your Honor's ruling on the motion to dismiss was in

20   January of 2017.

21           The month before that, in December of 2016 -- and this

22   is one of the exhibits in the binder that was given to Mr. Fox.

23   We didn't refer to it, but I believe it's Exhibit 204.  While

24   the parties are still having some back and forth about informal

25   discovery and discussions, there is a letter from the

1    utilities' counsel, Mr. Ter Molen, to one of my colleagues

2    dated December 9, 2016.  It's again Exhibit 204 from one of the

3    depositions in this case.

4           And on page 2 of that, counsel for Nicor writes:  To

5    be clear, the former gas lines bordering James Park, like we've

6    been talking about these last couple days, are not MGP

7    infrastructure.  No Skokie manufactured-gas operations extended

8    onto Evanston property, et cetera.

9           And so right about -- shortly before the time that we

10   have to -- before that -- before your Honor rules, their first

11   position is essentially, deny.  Those lines aren't ours.

12          So then after your Honor rules on the motion to

13   dismiss, their answers come due in February of 2017.  And they

14   do an about face and admit it.  And we saw the admissions today

15   when Mr. Fox was on the -- was on the stand.  I don't think I

16   need to go through those again.

17          So now they've admitted in February of 2017 that these

18   are our lines, and they add gas, manufactured gas, coming from

19   the Skokie MGP.

20          And so then discovery proceeds on that basis.

21   Documents are being produced.  Written discovery, including

22   April of 2017, preliminary disclosures listing among other

23   things people with knowledge, Mr. Fox.  And this is one -- I

24   believe one of our exhibits to our response to the motion to

25   amend.  They disclose Mr. Fox as someone with -- witness with

1   knowledge, including about the distribution pipelines.

2          So -- and then subsequent to that, Mr. Fox is -- as

3   we're heading toward -- getting into the preliminary injunction

4   proceedings, they indicate that Mr. Fox will testify as a fact

5   witness.  So then that led to us deposing him as a fact

6   witness.  And we also sent out the 30(b)(6) notice, which we

7   again covered today.  And Mr. Fox was the 30(b)(6) witness.

8          And then as I believe also came out today was in the

9   preparations for Mr. Fox's 30(b)(6) and fact witness, he was

10  also deposed in his individual capacity.  During February of

11  2018 when he's going through the box of documents that's been

12  gathered to help him prepare, this is when the issue comes up.

13  So that's February of 2018.

14         Don't know when exactly.  That's not clear from the

15  utilities' motion papers.  And then Mr. Fox's deposition is the

16  middle of the next month, March 16.  So charitably, I mean,

17  even if this was found out on February 28, there is two weeks

18  of their not telling us.

19         So Mr. Fox is again deposed on March 16.  Under the

20  schedule that was in place at the time, fact witness

21  depositions closed March 21.  March 22, we get an e-mail,

22  correspondence, from counsel for the utilities saying, hey, we

23  like to amend and change our answer to, we don't -- we don't

24  know.  And we objected to that, and motion was filed.  Motion

25  was filed, as you saw earlier today, April 4.

1         And I should also note that -- so we have fact witness

2    depositions closing March 21.  The request for us to consent to

3    their amending, March 22.  March 23 under the schedule that's

4    then in place, our expert reports are due.

5         So obviously, Mr. Hendron and others, other -- the

6    other experts that your Honor is familiar with -- and the

7    parties been putting substantial effort into getting those

8    ready.  And so we're -- then we're confronted with this desire

9    by the opposing party to change a fundamental admission.  So

10    that's problematic.

11         And then as we saw, Mr. Fox was asked to be an expert

12    later in April.  He was disclosed in May as an expert witness

13    and submitted his report.  And so again, fact -- going through

14    the chronology, so we have at his fact deposition Mr. Fox

15    saying, consistent with what he said here today, as to the

16    nature of the gas transmissions, where it was coming from, the

17    source:  I don't know.

18         So he started out with deny, admit, now we are to, I

19    don't know.  And that's the -- that -- and so their motion to

20    amend is to amend their answers to say, we don't know.

21         I am just looking at paragraph 11 of the motion.

22    There is the -- they propose the amended answer, you know, red

23    line and --

24         THE COURT:  Mr. Brooks, I have reviewed everything.

25         MR. BROOKS:  Okay.  Right.

1          So your Honor, given all this, given the procedural

2     posture of this, it would be really entirely inappropriate

3     to --

4          THE COURT:  Well, let me ask you, Mr. Brooks, I guess

5     the question becomes, if I allow the amendment, how is

6     plaintiff prejudiced at this time?  And specifically another

7     way to think about it and the way I think about it is, what

8     would plaintiff have done differently if the original response

9     to paragraph 42 from the utilities was, we don't know?

10          MR. BROOKS:  Then, your Honor, we would have taken

11     much more thorough discovery on the issue of this -- where

12     the -- where the gas was coming from in the pipes.  Given the

13     admission, there was no need for us to do that.  And --

14          THE COURT:  But you did -- I mean, you took some

15     discovery, right, with regard to the issue about the source of

16     the gas in the Dodge Avenue pipe.

17          MR. BROOKS:  We did, your Honor.  So at Mr. Fox's

18     deposition, what we have here is some questions that came up as

19     sort of -- if you will, sort of foundational questions to get

20     to something else.  And we kind of got blindsided with this,

21     you know, first we were admitting, now we're saying, we don't

22     know.  Out of the blue.

23          THE COURT:  And also, you know, I understand you got

24     the documents kind of late in the game, I guess.  But it seems

25     like even the document request that the city served early on in

1     the process asked for documents with regard to the issue about

2     the source of the gas in the pipeline, right?  So it's not like

3     -- it's not a situation where based upon the defendant's

4     statements in the original answer the city thought to itself,

5     well, then we're good.  We don't have to take any discovery on

6     this issue.  We're just going to live with what they told us,

7     and for the purposes of our case, for discovery, for experts,

8     et cetera, et cetera.

9              So you are not at that extreme, right?  I mean, you

10    took some discovery.  And Mr. Hendron did his own kind of

11    independent analysis based upon his -- well, everything that

12    Mr. Hendron talked about yesterday, trying to link the waste

13    that he found to the MGP facility.  And so what I'm just trying

14    to get straight or trying to understand is, what additional

15    discovery, either fact, expert or otherwise, would plaintiff

16    have undertaken had the statement been different?

17             MR. BROOKS:  Right, your Honor.  So first taking the

18    question of the document requests.  As I'm sure your Honor is

19    familiar, lawyers are very fond of drafting broad document

20    requests.  And so we did.

21             But there is a question between the document request

22    that is -- you make the document request, and then as is

23    inevitable in all these cases, and in this one particularly,

24    there was a lot of back and forth about what -- what are

25    objections, what are we really going to push for?

1   And so there certainly -- when you're horse trading,

2   if you will, as far as what are we really going to push for,

3   and you look at the fact, well, okay, so we asked for this.

4   But, look, there is an admission.  So shall we be focusing our

5   efforts elsewhere?  And the answer was, yes.  So there is that.

6   And then certainly, your Honor, if it had been, I

7   don't know, then there could have been various other avenues

8   that we could have looked at in terms of who we're going to

9   depose.  Just as one example, Mr. Fox referred to the three

10  people who gathered the documents for him.  I mean, you could

11  go into questions of what did you do?  Where did you look for

12  the documents?  Where were they found?  Where else could you

13  have looked?  What didn't you do?

14  Those are things that, given the admissions, we didn't

15  feel we need so -- you know, to devote our resources to,

16  particularly on the expedited schedule that we have here.  You

17  know, we were trying to focus in on what -- what needed to be

18  done.

19  Certainly there could have been request for

20  admissions.  You know, certainly if you have at one point party

21  admitting it and then wanting to walk that back and say, we

22  don't know, I think certainly it would have been appropriate to

23  issue a request for admissions and follow on interrogatories

24  saying, okay, admit what you admitted before.  And, you know,

25  at least one interrogatory saying, if you don't admit it, now

1   please tell us why you're not admitting it.  Certainly there

2   could have been more efforts done.  Certainly Mr. Hendron has

3   described the research that he did.  And he is a source

4   identification expert.  And he's focused on -- he certainly can

5   read the drawings that we were able to pry out of the

6   utilities' hands, and he did his -- he did his thing, and he

7   did the chemical and other analyses that he did.

8        But again, Mr. Hendron is not a lawyer.  I mean,

9   certainly, you know, we -- we've -- you know, there have been

10  prior to today -- I mean, Mr. Fox finally conceded on the stand

11  that Public Service Co. of Illinois was a Nicor predecessor,

12  and the lines were theirs.  That was -- that was an issue that

13  the utilities fought.

14       So, you know, there could have been a lot more about,

15  okay, if you really say you don't know, let's talk about who's

16  lines these are.  Let's go -- I mean, if we have to, let's go

17  through the corporate chain of history and chain of custody and

18  whatever, whose documents these are.

19       And certainly would it have been appropriate for us to

20  seek out another expert?  I mean, the utilities themselves are

21  questioning Mr. Hendron's ability to do things like, you know,

22  redrawings and, you know, know about gas flow and distribution

23  pipelines.

24       We don't agree with that, as your Honor knows from

25  yesterday's proceedings.  But, you know, would -- if we were in

1    the position of their saying, we don't know, and which acts as

2    a denial under the rules, as you know, then that's something we

3    could have at least considered.  How would we have come out on

4    that, I don't know, because we didn't have to go through that

5    process back several months ago.

6         So there -- those are some examples of things we would

7    have -- we would have done.  And certainly when you look at the

8    standard, when -- under the Seventh Circuit precedent, you

9    know, the Trustmark case, which we cited in the briefs, when a

10   proposed amendment is untimely, as this one certainly is, the

11   scheduling order in this case provided for amendments to

12   pleadings to be in July 2017, a year ago.

13        When the -- when there is such an untimely proposed

14   amendment, there is what's the -- what's the -- the Seventh

15   Circuit called the heightened good cause standard.  And that

16   is -- and so -- so we're not in a situation where the leave is

17   freely granted standard applies.  We are in the realm of the

18   heightened good cause standard.

19        And when you look at some of the factors that play

20   into that -- and the Chamberlain group case that we cited in

21   the brief cites those.  And it talks about undue delay.

22   Certainly, given the chronology here, our position at least is

23   that there has been undue delay.

24        Another factor is bad faith.  I'll leave it to your

25   Honor to consider that.

1          Dilatory motive, given the chronology, which your

2     Honor indicated he was familiar with, you know, particularly

3     with waiting until the day after fact depositions closed and

4     before our expert reports are due, and given the fact that

5     it -- it appears that they knew about this at least by

6     February.  And now we're talking about late March?

7          From our perspective, your Honor, there -- there

8     appears to have been dilatory motive and at least some

9     gamesmanship going on.  That's a factor that weighs against

10    allowing amendment under this heightened good cause standard.

11    We think it weighs in favor of denying amendment here.

12         And again, we have repeated failures to cure the

13    deficiencies.  So we have -- they sent us the letter I referred

14    to in December 2016 saying essentially, deny.  Apparently they

15    did some investigation between then and February of 2017 in

16    which they said, admit.

17         Then later, in conjunction with the proceedings with

18    respect -- with respect to Mr. Fox said, we don't know.  And

19    then the most interesting thing, your Honor, is, the amendment

20    they are requesting is an amendment to say, we don't know.  But

21    in his expert report and today on the stand, Mr. Fox wasn't

22    saying, I don't know.  He's saying, no.  It's -- so they gone

23    back full circle to, deny.

24         He is not saying -- I mean, at his March deposition he

25    said, I don't know.  But once he became an expert, as came out

1   in testimony today, his position changed on at least some of

2   these things to say, there is no evidence, no evidence, that

3   there was gas coming from the -- manufactured gas coming from

4   the Skokie MGP in these lines.

5           So, your Honor, they're -- they're moving to amend

6   their answer to take a position, I don't know, which is no

7   longer even their position.  Their position now is, deny.

8           So I just -- so really the -- your Honor, the -- if

9   Mr. Fox's latest version is to be believed, there is -- doesn't

10  appear to be a good-faith basis for them to amend their answer

11  to say, we don't know.  Their answer now is, deny.  So given

12  that, I'm having a hard time here at least understanding what

13  the basis would be for them to amend.

14          And, your Honor, again, I'm sure you are familiar with

15  the briefing.  And we've gone through some of the cases dealing

16  with the delay factor, the prejudice factor.  I -- you know,

17  going through the -- we talked about what other discovery and

18  other steps we would have taken.  So the city's position is,

19  we -- we would be prejudiced.  There was undue delay here.

20  And -- and we believe the motion should be denied.

21          THE COURT:  All right.  Thank you.

22          One thing, Mr. Brooks?

23          MR. BROOKS:  Yes.

24          THE COURT:  The historical documents upon which Mr.

25  Fox relies, do you have a position at this point with regard to

1    the admissibility of those documents?  Do they come in as

2    ancient documents?  Do they come in as business records?  I

3    don't know how the utilities is trying to get them in.

4           My first question, I guess, Mr. Ter Molen, do you have

5    a sense on what basis you are going to try to -- are you going

6    to offer them in as evidence?

7           MR. TER MOLEN:  We will be, your Honor.  I mean,

8    understand we had our discussion this morning, your Honor

9    consider them, I believe, as I understood, for the Daubert

10   purposes.  We do intend to offer them for evidence.

11          Obviously as your Honor knows, with Mr. Fox and

12   characterizing him as an expert, we were in an interesting

13   position, given the Seventh Circuit case law, with respect to

14   the fact that he is -- he is a Nicor employee.  And yet he

15   is --

16          THE COURT:  No, no.  I understand all that.  I am not

17   talking about that.

18          So my question is, are you going to try to offer them

19   in as a business record?  Or are you going to through other

20   means?

21          MR. TER MOLEN:  Certainly as business record, your

22   Honor.  If -- if that is not the best course, then we would

23   look at ancient documents or other possible exceptions as well.

24          THE COURT:  Are you going to object to their admission

25   for purpose of preliminary injunction hearing?

1          MR. BROOKS:  Honestly, your Honor, we hadn't gotten to

2   that determination yet.  I think, ancient documents, as I

3   recall, is -- addresses the hearsay question.  You know, there

4   may be other issues with these.

5          But I'll be honest, your Honor, we hadn't gotten that

6   far.  We've been focused on, you know, the discovery and

7   recently the Daubert hearings.  So we don't know yet.

8          THE COURT:  Okay.  Thank you.

9          So the utilities discovered these documents in

10  February 2017.

11         MR. SOSTRIN:  Correct.

12         THE COURT:  And so when was it that -- and Mr. Fox's

13  deposition was in March?

14         MR. SOSTRIN:  March.

15         THE COURT:  Sixteen, right?

16         MR. SOSTRIN:  Right.

17         THE COURT:  So when was it that the utilities came to

18  the decision, realization, determination, that these documents

19  indicated that their original answers to paragraph 42 may have

20  been mistaken?

21         MR. SOSTRIN:  Right.  Well, as I mentioned earlier, we

22  produced the documents themselves on March 2, and which I think

23  is maybe 12 days.  I think it was March 14 with the deposition.

24  I might be off a day or two on that.

25         And, you know, as Mr. Fox testified this morning, you

1    know, looking through the historical documents and drawing

2    actual analysis and conclusions from them as, you know, an

3    iterative process.  And I believe even Mr. Hendron testified to

4    that yesterday.

5         So even though, you know, we had discovered these

6    documents and thought they might be relevant in February and we

7    produced them to the city, it was really even further in

8    preparing for Mr. Fox's deposition in the, you know, week or

9    two ahead of time that, you know, we confirmed with Mr. Fox

10   that this was his analysis.  And at least at the time, you

11   know, based on what he had reviewed in preparing for his --

12   and focused on in preparing for his 30(b)(6) deposition, his

13   conclusion at the time was that he didn't know there wasn't

14   sufficient information there to determine whether, you know,

15   the Dodge gas line actually carried manufactured gas from the

16   Skokie MGP.

17        THE COURT:  Okay.  So what you are saying is, it was

18   pretty shortly before he gave his deposition that he came to

19   that determination?

20        MR. SOSTRIN:  Correct.

21        And just for broader perspective, your Honor, during

22   this whole time, this was obviously an expedited discovery

23   schedule that all the parties were, you know, working very hard

24   to meet, both in terms of document collection, document

25   production, and then in 2018 actually analyzing those documents

1    and getting ready for all these depositions.  You know, it was

2    a very busy time for everybody.

3          So within that very compressed schedule, in February,

4    March we found these documents.  We produced them.  Mr. Fox

5    testified about it.  And we sought leave to amend our

6    complaint.

7          And now, the Court asked the city earlier, what would

8    they have done differently.  And I think that's a good

9    question.  You know, when we first met and conferred with the

10   city on this motion, we asked them that same question, you

11   know, if we amended, you know, is there any -- you know, what's

12   the issue?  Is there any, you know, discovery that you would

13   want?  And they -- they didn't identify anything for us.

14         As we discussed, the city served document requests on

15   this issue.  They served interrogatories.  They served, as the

16   city highlighted this morning, you know, I think four or five

17   30(b)(6) topics on this issue.

18         And, you know, as we were horse trading about -- you

19   know in our negotiations about the scope of discovery, I could

20   represent to you that this issue of our answer, you know,

21   didn't come up once.  If the city was, you know, somehow

22   holding back on what it was asking for in those negotiations,

23   we certainly, you know, did not know about it.

24         So as far as we could tell, there is really -- the

25   city got the discovery it needed.  They admitted that on page 9

1    of their response, which we showed the Court earlier.  So there

2    is really, you know -- while we can pontificate about, you

3    know, wish list of things now, on the expedited discovery

4    schedule they took all the discovery that they felt they needed

5    on -- at the time in order to provide Mr. Hendron, you know,

6    whatever factual basis he felt he needed to issue his opinions

7    in his September 2017 report, and in his ultimate, I guess,

8    March 2018 expert report.

9         So there is really -- you know, the parties -- on the

10   expedited schedule that the city requested, the parties took

11   pretty significant discovery here about documents,

12   interrogatories, depositions.  And there is really, you know,

13   nothing that would have been done differently if, you know, the

14   utilities' answer had been slightly different.

15        THE COURT:  Okay.  Thank you.

16        All right.  This is my ruling on the motion:

17   Defendants have filed a motion to file amended answers to

18   paragraph 42 of plaintiff's complaint.  Under Rule 15(a)(2) a

19   party may amend its pleading only with the opposing parties'

20   written consent or leave of Court.  The Court should freely

21   give leave when justice so requires.  This rule, of course,

22   reflects the policy that cases should generally be decided on

23   the merits, rather than on the basis of technicalities.

24        One of the central elements of the Court's inquiry

25   under Rule 15(a)(2) is whether and to what extent the

1    non-moving party will be prejudiced if the amendment is

2    allowed.  Also because the deadline to amend pleadings has

3    passed, defendants must also satisfy the good-cause requirement

4    under Rule 16(b)(4), which focuses on the actions and knowledge

5    of the moving party.

6         So addressing those in reverse order.  First with

7    regard to Rule 16, here the Court finds, based upon the record

8    before it, that defendants have satisfied Rule 16's good-cause

9    requirement for the amendment.  At the time that they prepared

10   their answers, they did not have the benefit of the historical

11   documents they found during discovery in this case.

12        Plaintiff nevertheless contends that defendants did

13   not exercise due diligence because of the time that passed

14   between the time that the defendants discovered the documents

15   in February 2017, and when they filed the motion to amend.  But

16   the record before the Court indicates that the defendants

17   themselves may not have fully appreciated the contents of the

18   historical documents or the consequences of the historical

19   documents until Dan Fox took a closer look at the documents in

20   the process of preparing as a Rule 30(b)(6) deponent on these

21   issues before he was deposed in March of 2017.

22        Accordingly, based upon this record, the Court finds

23   that defendants exercised reasonable diligence prior to seeking

24   to amend their answers and have demonstrated good cause to do

25   so.

1          Now, under Rule 15, the Court is to grant motions for

2   leave to amend pleadings liberally.  The key is whether

3   granting the motion will cause undue prejudice to plaintiff.

4   Here defendants produced historical documents, including the

5   documents that form the basis of Dan Fox's expert reports and

6   his 30(b)(6) depositions to plaintiffs in March of 2017, early

7   March of 2017.

8          Furthermore, despite defendants' original answers to

9   paragraph 42, plaintiff propounded written discovery to

10  identify whether and to what extent manufactured gas produced

11  by the Skokie MGP plant was transported through the Dodge

12  Avenue gas line.  And what is more, plaintiff had occasion and

13  did in fact depose Mr. Fox on this very issue during the

14  Rule 30(b)(6) deposition and later during his expert

15  deposition.

16         Additionally, it is clear that plaintiff realized that

17  this could be a contested issue and has offered Mr. Hendron as

18  an expert to opine based upon his independent analysis that the

19  Skokie MGP plant did in fact transport manufactured gas through

20  the Dodge Avenue gas line.  Accordingly, based upon the record

21  before the Court, the Court finds that allowing the amendment

22  will result in little, if any, prejudice to plaintiff.

23         Furthermore, this issue, although it may not be

24  dispositive as plaintiff argues, the issue is relevant to the

25  claims in this case, as evidenced by the testimony of

1    plaintiff's own expert Mr. Hendron.  And there appears to be

2    some evidence to suggest that defendants' original answers to

3    this paragraph may have been incorrect or not entirely correct.

4              Thus, the interest of justice weighed in favor of

5    granting the motion.

6              That said, I do realize that the fact that defendants

7    provided the statement in their original answers may have been

8    a factor that plaintiff weighed in deciding to pursue

9    particular lines of discovery or particular lines of

10   questioning during depositions.  As such, at plaintiff's

11   request, the Court will reopen fact discovery to permit

12   plaintiff to take additional discovery as to this limited

13   issue, including any issues involving the ownership of the

14   Dodge Avenue pipeline, if that issue is contested, either prior

15   to or after the preliminary injunction hearing.

16             The Court will also entertain a motion by plaintiffs

17   for the assessment of reasonable fees and costs that plaintiff

18   will incur to conduct this additional fact discovery.

19             Furthermore, again at plaintiff's request, the Court

20   will permit plaintiff the opportunity to offer a rebuttal

21   expert to Mr. Fox on this issue, again either before or after

22   the Court conducts the preliminary injunction hearing.  The

23   Court finds that these steps will address whatever prejudice

24   plaintiff may suffer as a result of the amendments.

25             So that plaintiff may have some time to discuss this

1  amongst themselves and to review the record, the Court will ask

2  that plaintiffs provide -- file a status report by this Monday

3  at noon, letting the Court know whether it will seek additional

4  fact discovery and/or expert discovery as to these issues, the

5  timing that it believes -- the time it needs to do so, and what

6  impact if any that the requested timing would have on the

7  preliminary injunction hearing schedule.

8         The Court would request that plaintiff, after deciding

9  how to proceed, consult with defense counsel, so that there can

10  be a substantive meet and confer before the plaintiff files the

11  status report by noon on Monday.  The status report, to the

12  extent there is any disagreement between the parties, should

13  set forth the respective positions with regard to the parties

14  as to any new discovery that plaintiff wishes to take as to

15  these issues, as well as the scheduling for the preliminary

16  injunction hearing.

17         Along those lines, I will set another status hearing

18  in this case -- not that I want you all to come back, but I

19  think it's better to deal with this sooner rather than later --

20  at 10:00 o'clock on Tuesday.  Okay?

21         MR. TER MOLEN:  Your Honor, apologize.  Just briefly,

22  is it possible to have it on Thursday instead, your Honor?  I

23  know we want to move quickly.

24         THE COURT:  I can't do it Thursday.  Can we do it

25  sometime -- I can't do it Wednesday either.  Tuesday is the

1    only time I have next week.

2            MR. TER MOLEN:  Okay.  Very good, your Honor.

3            THE COURT:  I could schedule it later in the day?

4            MR. TER MOLEN:  No, that's quite all right.  I'll

5    figure things out, morning as earlier will be better.  Thank

6    you.  Appreciate it.

7            THE COURT:  All right.  So for those reasons stated,

8    defendants' motion for leave to amend answers to paragraph 42

9    of plaintiff's complaint is granted.

10           Okay.  Thank you.

11           MR. TER MOLEN:  Thank you, your Honor.  If I can just

12   ask your Honor --

13           THE COURT:  Yes.

14           MR. TER MOLEN:  -- one additional point.  I believe

15   that defendants utilities' response to the preliminary

16   injunction motion is set for I want to say July 30, your Honor.

17   Shall we address that as well in the filing that's due Monday?

18           THE COURT:  That's fine.

19           MR. TER MOLEN:  Okay.  Thank you, your Honor.

20           THE COURT:  Okay.  Thank you.

21       (Which were all the proceedings heard in this case.)

22

23

24

25

1                          CERTIFICATE

2          I HEREBY CERTIFY that the foregoing is a true, correct

3    and complete transcript of the proceedings had at the hearing

4    of the aforementioned cause on the day and date hereof.

5

6    /s/Alexandra Roth                        7/19/2018
     _____    _____
7    Official Court Reporter                    Date
     U.S. District Court
8    Northern District of Illinois
     Eastern Division
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25