```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   CITY OF EVANSTON, an Illinois    )  Docket No. 16 C 5692
     Municipal Corporation,           )
 4                                    )
                          Plaintiff,  )
 5                                    )
              v.                      )  Chicago, Illinois
 6                                    )  July 24, 2018
     NORTHERN ILLINOIS GAS COMPANY,   )  10:00 o'clock a.m.
 7   an Illinois Corporation; and    )
     COMMONWEALTH EDISON COMPANY,     )
 8   an Illinois Corporation,         )
                                      )
 9                        Defendants. )

10           TRANSCRIPT OF PROCEEDINGS - MOTION
              BEFORE THE HONORABLE JOHN Z. LEE
11
     APPEARANCES:
12
     For the Plaintiff:          SPERLING & SLATER, by
13                               MR. THOMAS DAVID BROOKS
                                 55 West Monroe Street
14                               Suite 3200
                                 Chicago, Illinois 60603
15
                                 JEEP & BLAZER, LLC, by
16                               MR. JEFFERY D. JEEP
                                 3023 North Clark Street
17                               Suite 214
                                 Chicago, Illinois 60657
18

19

20
                         ALEXANDRA ROTH, CSR, RPR
21                         Official Court Reporter
                         219 South Dearborn Street
22                              Room 1224
                          Chicago, Illinois 60604
23                            (312) 408-5038

24

25
```

```
 1   APPEARANCES:  (Continued)

 2   For Defendant Northern           MAYER BROWN LLP, by
     Illinois Gas:                    MR. MARK R. TER MOLEN
 3                                    MS. JAIMY LEVINE HAMBURG
                                      MR. MATTHEW C. SOSTRIN
 4                                    71 South Wacker Drive
                                      Chicago, Illinois 60606
 5
     For Defendant Commonwealth       JENNER & BLOCK, LLP, by
 6   Edison:                          MS. GABRIELLE SIGEL
                                      MR. ANDREW WILLIAM VAIL
 7                                    353 North Clark Street
                                      Chicago, Illinois 60654
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings had in open court:)

2           THE CLERK:  16 CV 5692, City of Evanston versus
3  Northern Illinois Gas.

4           MR. BROOKS:  Good morning, your Honor.  Thomas Brooks
5  on behalf of plaintiff, City of Evanston.

6           MR. JEEP:  Good morning, your Honor.  Jeffery Jeep for
7  City of Evanston.

8           MR. TER MOLEN:  Good morning, your Honor.  Mark Ter
9  Molen for defendant Nicor Gas.

10          MS. SIGEL:  Gabrielle Sigel for Commonwealth Edison.

11          MR. SOSTRIN:  Matthew Sostrin for Nicor Gas.

12          MR. VAIL:  Andrew Vail on behalf of Commonwealth
13 Edison.

14          MS. HAMBURG:  And Jaimy Hamburg for Nicor Gas.

15          THE COURT:  All right.  Good morning, everyone.

16          So I reviewed the status report that was submitted by
17 the parties on July 23.  Basically what the plaintiff would
18 like to do is, plaintiff would like to, I guess, forego for the
19 purpose of preliminary injunction hearing any additional
20 discovery with regard to the issues that dealt with or that
21 came up in the motion to amend, is that correct?

22          MR. BROOKS:  Correct, your Honor.

23          THE COURT:  Okay.  And the utilities -- so what's the
24 utilities' objection to that?

25          MR. TER MOLEN:  Your Honor, basically our objection is

1  that if the city wants discovery on this issue, it should get
2  that discovery now for purposes of PI hearing.  Otherwise our
3  concern, your Honor, is -- is that given the nature of the
4  underlying issue on which the Court allowed discovery, it --
5  it's a topic that clearly -- we think clearly is at issue for
6  the PI hearing.
7        It also in our view clearly would be at issue in the
8  subsequent proceedings, whether it would be a second PI hearing
9  filed by the city or trial.  And it seems to us, your Honor,
10  that it would be unfair to go through on an initial hearing,
11  and then afterwards say, gee, now even though fact discovery
12  closed at the end of April, we, the city, would like to get
13  additional discovery, and then potentially subject both the
14  utilities and the Court to having to deal with the same issue
15  twice.
16        THE COURT:  Okay.  I'm going to go ahead and grant the
17  city's request.  That's basically exactly how I contemplated
18  it, that it's to address any prejudice that the city believes
19  it has as a result of the amendment.  Therefore, I think it's
20  only fair to allow the city to -- it's also the city's PI
21  motion.  So to the extent it has the burden of proof on that
22  issue, if they can't prove it, they can't prove it.  And any
23  subsequent motions, that issue will certainly -- and subsequent
24  proceedings will be much more narrow than the one we are going
25  to have coming up.

1   So that's fine. The city's request to conduct that
2   additional discovery after the preliminary injunction hearing
3   is acceptable to the Court.
4              MR. BROOKS: Thank you, your Honor.
5              THE COURT: With regard to the Daubert motions as to
6   Hendron and with regard to Fox, we will issue a short order
7   shortly with regard to the scope of their testimony that I will
8   allow during the preliminary injunction hearing. I am not
9   going to exclude either of them whole cloth, however, just for
10  scheduling purposes. Okay?
11             The -- and just I know I shouldn't do this, but I know
12  you guys are preparing. So to give you a bit of a preview,
13  with regard to Mr. Fox I do believe that he is qualified to
14  interpret utility diagrams and to opine on what those diagrams
15  mean and convey as well as to opine on what the particular
16  equipment that is set forth in the diagram is intended to do.
17  So, for instance, we talked about the valves and the shut-off
18  valve and things like that.
19             With regard to any opinion based upon his historical
20  understanding, as to when or the supply of natural gas or the
21  marketing of natural gas, I just simply don't think he has the
22  qualifications to do that. All right? But I think that's only
23  a small part of his opinions anyway.
24             With regard to Mr. Hendron, I am not going to allow
25  him to testify as to risk assessment. I don't think he is

1 qualified to do that. And there are a couple other areas that
2 I'm kind of considering further.
3     But generally speaking, just so the parties can
4 prepare, with regard -- I don't think that there is such an
5 expert on source identification. In fact, I think if that were
6 the case, I think that any environmental consultant would be
7 some expert on source identification because that's what all
8 environmental consultants do. The first question the client
9 has is, where did it come from, right?
10     But I think that Mr. Hendron is qualified to -- so I
11 do think he is qualified by another, I guess, title, for lack
12 of a better word. I don't think there is a field called source
13 identification. But I do think he is qualified to basically
14 assess the environmental data that was collected and, based
15 upon his experience and expertise, give an the opinion as to,
16 weigh all of those, and consider all of the different
17 environmental factors as well as historical operating facts,
18 and come to an opinion as to what he thinks the source of the
19 contamination is. Basically, contamination transport, you
20 know, where did this start, and where did it go, and how did it
21 get there?
22     So whether you call that source identification or an
23 expert in kind of contamination transport, I don't think it
24 really matters. I think what matters is whether or not he is
25 qualified to give the opinions that are set forth in that first

```
1   exhibit that the plaintiffs presented during his testimony.
2             And I think putting aside risk assessment and a couple
3   of other areas that I will more specifically identify in the
4   order, I think he is qualified to render his opinions with
5   regard to contamination transport in trying to assess the
6   source of the contamination.  Where did the contamination
7   originate, and how did it get to where he found it?
8             MR. BROOKS:  Okay.  Thank you.
9             THE COURT:  But again, that's a complete advisory
10  opinion.  And the order is not finalized, but we will get it
11  out as soon as we can.  But it gives you an idea.
12            MR. TER MOLEN:  Thank you.
13            MR. BROOKS:  Thank you, Judge.
14            THE COURT:  Thank you.
15            MR. TER MOLEN:  Your Honor, just with respect to
16  looking ahead to the PI hearing, and witnesses disclosures and
17  other scheduling issues, I take it you prefer that we talk with
18  the city to come up with a schedule and submit that to the
19  Court?  Or does the Court have any set ideas?
20            THE COURT:  You know, I am glad you brought it up.  I
21  do think I would like the parties to kind of discuss the
22  potential list of witnesses, kind of order of witnesses.  And
23  if you could go ahead and file that as a status report.  Let's
24  see.
25            File it by the 10th of August.
```

1     MR. BROOKS:  And that, your Honor, is to just discuss
2  the list of witnesses and the order?
3     THE COURT:  Right.
4     Did we talk about -- other than setting the schedule
5  did we talk about time limits on examinations?
6     MR. BROOKS:  I don't believe we did.
7     MR. TER MOLEN:  No.
8     THE COURT:  All right.  I'm going to go back and look
9  at the schedule of hearings.  And I will issue a minute order,
10 or Ms. Acevedo will let everyone know, how much time each side
11 is going to have with regard to examinations and
12 cross-examinations.  Basically given what I know about the
13 case, which is a lot more now than before, I am going to
14 basically split down the middle.  Okay?
15    And so I will go back, calculate kind of how many
16 hours there are, and I'll keep a clock.  And the clock will run
17 whenever a side conducts an examination, whether it be
18 examination, cross or redirect.  If there is a -- it's a
19 preliminary injunction, so I don't expect a lot of objections.
20 But if there are any, whether or not the clock stops, that's up
21 to me.  It's more FIFA rules than NBA rules.
22    MS. SIGEL:  As long as it's not roller derby rules.
23    THE COURT:  And at the end of each day I will give you
24 an update on kind of how much time is left.
25    MR. BROOKS:  All right.

1           THE COURT: But I'll let the parties know that
2  shortly.
3           MR. TER MOLEN: Thank you, your Honor.
4           MR. BROOKS: Thank you, Judge.
5           MS. SIGEL: We have a couple other housekeeping
6  issues. Your Honor, we had asked and there is no objection to
7  25 pages for responsive brief on the PI. We assume that's okay
8  with your Honor?
9           THE COURT: That's fine. And when is, can you remind
10 me --
11          MS. SIGEL: And the date currently is due July 30,
12 which is less than a week from today. We had frankly been
13 hoping, your Honor, to be able to pull in the wisdom of the
14 Daubert motion decisions before issuing that, before filing the
15 response, which is why we had suggested that we file the
16 response a week before the start of the hearing, which would be
17 August 7, anticipating that that would give your Honor
18 sufficient time to rule on the various Daubert motions.
19          So that response would reflect the Daubert rulings.
20          THE COURT: All right. So --
21          MR. BROOKS: Your Honor, may I? From the city's
22 perspective, I mean, as we indicated in the status report, as a
23 courtesy, you know, if they need a couple days, certainly
24 that's fine. We're just concerned about having adequate time
25 to review their response and prepare for the hearing. So

1   that -- whatever your Honor wants.

2         THE COURT: I guess, is there really any question,
3   though, as to each side's position regarding the issues in this
4   case? I think by now everyone knows what the other side is
5   going to argue factually and legally, right? I mean, legally
6   there is -- we are not dealing with a much -- at least any more
7   of really a lot of controversy or dispute. It's really a
8   matter of kind of factually what will the experts say, what
9   will the factual findings be.

10         So I wonder how helpful the response would be before
11   the preliminary injunction.

12         MR. BROOKS: I think, your Honor, certainly we
13   understand the main contours. I think it gets down to more
14   when you get down into the weeds of specific points. And
15   counsel is skillful. They certainly in the briefing with
16   respect to Mr. Hendron squeezed in a lot of points in 25 pages.
17   So I think that's the focus, just getting down into the weeds
18   and not really the -- certainly we understand what their main
19   arguments are.

20         But again, your Honor, whatever your Honor feels
21   appropriate, we'll deal with it.

22         THE COURT: Well, I guess -- all right. I am glad we
23   are having this discussion. It's been a bit of a whirlwind.

24         So first of all, my decision with regard to the motion
25   for preliminary injunction will be based solely on the evidence

1  that's presented during the preliminary injunction hearing.  I
2  am not going to consider anything else.  So I don't want any
3  supplemental depositions.  And, you know, I don't want any
4  stipulation of the parties, oh, Judge, by the way, both sides
5  have agreed that you can look at these 40 depositions that are
6  300 pages long.  It's going to be whatever comes in during the
7  hearing.
8         MR. BROOKS:  Okay.
9         THE COURT:  Okay?  And what that means is, generally
10 what the parties -- what you are going to ask me after the
11 hearing is, you are going to want more briefing to base your
12 motion or your response on the actual evidence that's presented
13 during the preliminary injunction hearing.
14        So I wonder whether it just makes more sense to wait,
15 to allow the defendants to file their response after the
16 preliminary injunction hearing, and then you will get a reply.
17 And I will give you as many pages as they get for the response
18 as a reply.  And that would constitute the post-hearing briefs
19 in this case.
20        Given the fact that I think there aren't going to be
21 any surprises during the hearing -- I can't imagine there being
22 any surprises during the hearing.  I mean, I bet if you guys --
23 if we started the hearing today, you all could know -- and I
24 asked you to switch roles, you guys would be able to do it
25 perfectly.  And, you know, with a little prep, my guess is I

1  could probably give the closing arguments for both sides, you
2  know.  I think we all know what we are dealing with.
3          And so I think it makes sense to wait until after the
4  hearing because it eliminates a layer of briefing.  Wait to the
5  hearing to have the defendants file their response.  And I
6  think based upon what we are going to see at the hearing, I
7  think that -- and I am going to -- so let's talk about post-
8  hearing briefs.
9          So given the defendants' request, what I am going to
10 do is, I am going to grant it in some respects.  But I am going
11 to have the defendants go first on the post-hearing briefs.
12 Okay?  So in lieu of a response to the preliminary injunction
13 motion, that will be your response.  I am going to limit it to
14 40 pages.  Okay?
15         And let's see.  And, Mr. Ter Molen, how much time do
16 you think you'll need after the hearing?
17         MS. SIGEL:  It's August 30.
18         MR. TER MOLEN:  Your Honor, I would think --
19         MS. SIGEL:  We got to get the transcript.  We have to
20 get the transcripts.  So trying to anticipate that.  So --
21         THE COURT:  Twenty-eight days?
22         MR. TER MOLEN:  That will be fine.  We can make that
23 work.
24         MS. SIGEL:  So that would be, your Honor, September 27
25 is the Thursday, or 28th, the Friday.

1             THE COURT:  All right.  It will be September 28.
2             MS. SIGEL:  Thank you, your Honor.
3             THE COURT:  Then how much would the plaintiff like for
4    your reply?
5             MR. BROOKS:  I think if we could have 30 days, your
6    Honor, I guess that would take us out to the 29th, 28 or 30.
7             THE COURT:  That's fine.  So that's October 30.  Okay?
8    And that too I will limit to 40 pages.
9             MR. BROOKS:  Okay.
10            THE COURT:  All right.  The other thing I would like
11   would be a 15-page separate document, 15-page proposed findings
12   of fact.  All right?  This is much like the -- if you look at
13   the local rules for 56.1s, I don't want any argument in it.
14   Okay?  And I don't want a whole paragraph for each number.  But
15   I just want kind of simple facts laid out and citations in the
16   PI hearing for those facts.  It will just help me immensely.
17            MS. SIGEL:  Your Honor, the one -- just raising this
18   as part of our planning.  The utilities have not had an
19   opportunity since the motion was filed to respond to the legal
20   issues involved in the PI motion, including in a RCRA case.
21   And we are -- we want to get your Honor's guidance.
22            Is that something we should include in this
23   post-hearing response?  Is this something -- you know, we had
24   anticipated -- up until five minutes ago, we had anticipated
25   that the filing we'd do would be addressing those legal

1 elements, irreparable injury, et cetera, as well as putting
2 some factual background in there.
3 But so we are seeking your Honor's advice here,
4 including whether you would also like conclusions of law as a
5 separate documents or anything like that.
6 THE COURT: Yes, I don't want conclusions of law. But
7 you can just include those arguments in your 40 pages.
8 MS. SIGEL: Okay. Thank you, your Honor.
9 And the 15-page proposed finding of fact is due the
10 same time --
11 THE COURT: Yes.
12 MS. SIGEL: -- as the brief, the initial brief. So
13 September 29.
14 MR. TER MOLEN: Twenty-eight.
15 MS. SIGEL: Twenty-eight, and October 30.
16 THE COURT: That will help me make my rulings sooner
17 rather than later.
18 MR. BROOKS: Okay.
19 THE COURT: Okay. All right. Anything else we need
20 to address today?
21 MR. BROOKS: I don't believe so.
22 MR. TER MOLEN: Thank you.
23 THE COURT: Thank you very much.
24 MS. SIGEL: Thank you.
25 (Which were all the proceedings heard in this case.)

```
 1                          CERTIFICATE
 2           I HEREBY CERTIFY that the foregoing is a true, correct
 3   and complete transcript of the proceedings had at the hearing
 4   of the aforementioned cause on the day and date hereof.
 5

 6    /s/Alexandra Roth                              7/25/2018
     _____         _____
 7    Official Court Reporter                        Date
      U.S. District Court
 8    Northern District of Illinois
      Eastern Division
 9
```